**Cynthia L. WENZLAFF, Plaintiff,**

v.

**NATIONSBANK, Defendant.**

No. AW–96–1961.

United States District Court, D. Maryland.

Oct. 18, 1996.

Stanley Derwin Brown, McCarthy, Bacon & Costello, Lanham, MD, for Cynthia L. Wenzlaff.

Steven David Frenkil, Brooks R. Amiot, Miles & Stockbridge, Baltimore, MD, for NationsBank.

*MEMORANDUM OPINION*

WILLIAMS, District Judge.

Presently pending before the Court is Defendant's Motion to Dismiss the Complaint, filed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Plaintiff has agreed to a voluntary dismissal of Counts IV and V of the complaint, without prejudice. The Court will therefore address only Counts I, II, and III.

*Background*

This suit arises from the events that followed Plaintiff's taking disability leave from

her employer in December 1993, for medical reasons related to her pregnancy. Plaintiff was an employee of Maryland National Bank, which merged with NationsBank during Plaintiff's leave. Pursuant to this merger, NationsBank took over Maryland National Bank's payroll. Plaintiff alleges that following her return from leave and as a result of her pregnancy, she was discriminated against in violation of the American with Disability Act, the Pregnancy Discrimination Act, and the Family and Medical Leave Act of 1993. Specifically, Plaintiff alleges that when she returned to work, she was told that her position had been given to another person and she was subsequently employed only in positions that were far inferior to that which she had held before her absence. Prior to taking leave, Plaintiff received employee awards and had never been fired from a position. She claims that her treatment at work following her return from leave was the direct result of her employer's discrimination against her on the basis of her pregnancy.

### Standard of Review

It is well established that a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This standard requires the Court to "construe the complaint, and the allegations contained therein, favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### Discussion

The Counts before the Court are Counts I, II, and III. These comprise Plaintiff's claims under the Americans with Disabilities Act ("ADA"), the Pregnancy Discrimination Act ("PDA"), and the Family and Medical Leave Act ("FMLA"), respectively. The Court will address these three in that order.

In Count I, Plaintiff alleges that she was a qualified person with a disability as defined under the ADA, 42 U.S.C. § 12101, at the time of her employment and discharge.

Plaintiff states that her disability was her pregnancy. She claims that in terminating Plaintiff's employment shortly after Plaintiff returned from her disability and maternity leave, NationsBank violated the ADA by acting with the intent to discriminate against a person with a disability. Two central issues are before the Court regarding this Motion to Dismiss with respect to Count I. These are whether pregnancy is considered a disability under the ADA, and whether this action has been brought within the applicable statute of limitations for actions under the ADA. A negative answer to either of these questions would require the Court to dismiss Count I of Plaintiff's Complaint.

■ With near unanimity, federal courts have held that pregnancy is not a "disability" under the ADA. Although the Fourth Circuit has not published an opinion on the issue, district courts in other circuits have read the ADA to preclude considering pregnancy a disability under its terms. *See, e.g., Byerly v. Herr Foods, Inc.,* 1993 WL 101196, *4 (E.D.Pa.) ("The statute itself [ADA], however, clearly indicates that pregnancy was not to be considered an impairment by the Act."); *Tsetseranos v. Tech Prototype, Inc.,* 893 F.Supp. 109, 119 (D.N.H.1995) ("[P]regnancy and related medical conditions are not 'disabilities' as that term is defined by the ADA."); *Villarreal v. J.E. Merit Constructors, Inc.,* 895 F.Supp. 149, 152 (S.D.Tex. 1995) ("[P]regnancy and related medical conditions do not, absent unusual circumstances, constitute a 'physical impairment' under the ADA. Therefore, pregnancy and related medical conditions are not 'disabilities' as that term is defined by the ADA."); *Gudenkauf v. Stauffer Communications Inc.,* 922 F.Supp. 465, 474 (D.Kansas 1996) ("[T]his court is not persuaded ... that pregnancy as the natural consequence of a normal reproductive system is a disability [under the ADA]."); *Jessie v. Carter Health Care Center, Inc.,* 926 F.Supp. 613, 617 (E.D.Kentucky 1996) ("No unusual circumstances exist with respect to Jessie's pregnancy and thus such condition is not a 'physical impairment' under the ADA.").

In so holding, these cases consistently refer to the EEOC's interpretive notes on the

ADA. In these notes, the EEOC explains that "It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural and economic characteristics that are not impairments." 29 C.F.R. sec. 1630.2(h), at 401 (1995). The EEOC notes explain that

> The definition of the term "impairment" does not include physical characteristics such as eye color, left-handedness, or height, weight or muscle tone that are within "normal" range and are not the result of a physiological disorder. The definition, likewise, does not include characteristic predisposition to illness or disease. Other conditions, *such as pregnancy,* that are not the result of a physiological disorder are also not impairments.

*Id.* (emphasis added). Like the District Courts in the aforementioned cases, this Court concludes that this clear language from the EEOC precludes considering pregnancy a disability under the ADA.

The case law cited by Plaintiff does not effectively refute this. As support for her argument that pregnancy is properly considered a disability under the ADA, Plaintiff analogizes to *Pacourek v. Inland Steel Co.,* 858 F.Supp. 1393 (N.D.Ill.1994). In *Pacourek,* however, the plaintiff did not claim pregnancy itself as her disability. Rather, she claimed that her medical problem that prevented her from becoming pregnant (called esphofical reflux) was a disability, as it substantially limited the major life activity of reproduction. This Court does not accept Plaintiff's reading of *Pacourek* that "the Court in *Pacourek* denied the defendant's motion to dismiss by holding that pregnancy is a disability." Plaintiff's Response at 1. The *Pacourek* Court clearly states that "the alleged impairment is plaintiff's condition of esphofical reflux, which, as described in the Complaint, prevents plaintiff from becoming pregnant naturally." *Pacourek* at 1404. The Court held that reproduction is a "major life activity," such that an impairment substantially limiting it would qualify as a disability. This is clearly not the same as claiming that the major life activity is itself a disability, as Plaintiff argues.

Plaintiff's reliance on *Patterson v. Xerox Corporation,* 901 F.Supp. 274 (N.D.Ill.1995), is misplaced for similar reasons. In *Patterson,* the plaintiff's disability was not pregnancy per se. Rather, it was severe back pain caused in part by a prior back injury and in part by complications of pregnancy. Because this was not simply a case of normal pregnancy, the court found that this was a disability. However, the *Patterson* court never suggests that pregnancy itself is a disability. Similarly, Plaintiff's reliance on *Abbott v. Bragdon,* 912 F.Supp. 580, 586 (D.Me.1995), is also misplaced. The *Abbott* case does not even address the question of whether pregnancy is a disability under the ADA, as *Abbott* references the reproductive system in the context of A.I.D.S.

The only case cited by Plaintiff that actually does hold pregnancy to be a disability under the ADA is *Chapsky v. Baxter V. Mueuller Div.,* No. 93–6524, 1995 WL 103299, 66 Empl.Prac.Dec.Par. 43,573 (N.D.Ill. Mar. 9, 1995). *Chapsky* interprets *Pacourek* as holding "that reproduction is a major life activity, therefore, it must be considered a disability," and that "the reproductive system is a physical impairment which not only affects major life's activities but life is also substantially limited by reproduction." 1995 WL 103299, at *3. The accuracy of *Chapsky's* reading of *Pacourek* is questionable at best. This Court adopts the view that another Court has already taken in grappling with the apparent inconsistency between *Chapsky* and *Pacourek.* In *Gudenkauf v. Stauffer Communications Inc.,* the Court stated, "This court simply does not share *Chapsky's* broad reading of the *Pacourek* opinion. Whether pregnancy as the result of a normal functioning reproductive system is an impairment was not an issue discussed or decided in the *Pacourek* opinion." 922 F.Supp. at 473. While none of these cases are controlling in this District, this Court has nonetheless considered them and has found *Chapsky* to be aberrant among the body of case law on this issue. Consequently, this Court adopts the view propounded by the EEOC and the majority of courts, that pregnancy is not a disability under the ADA. For this reason, the Court will grant Defen-

dant's Motion to Dismiss with respect to Count I.

In Count II, Plaintiff alleges violations of the PDA. Defendant does not explicitly challenge whether Plaintiff has alleged sufficient facts to withstand a motion to dismiss on this claim. Rather, Defendant moves for a dismissal of Count II based solely on the argument that plaintiff's claim under the PDA is time-barred. Under the PDA, claims must be brought within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e); *See also EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 123, 125, 108 S.Ct. 1666, 1675, 1676, 100 L.Ed.2d 96 (1988). Plaintiff and Defendant have agreed that Plaintiff filed her Charge Information Form on August 1, 1995. Plaintiff's Response at 3; Defendant's Reply to Plaintiff's Response at 5. However, as Defendant points out in its Reply, Plaintiff has made inconsistent allegations regarding the date that she was discharged. She alleges that she quit Defendant's employ on December 23, 1994 (Complaint ¶ 17), but also claims that she was discharged by Defendant on or about September 25, 1994 (Complaint ¶¶ 9, 36). If her employment did not cease until December 23, 1995, Plaintiff has met the 300–day statute of limitations. However, if her employment ceased on September 25, 1994, Plaintiff is outside the 300–day time window. Because this is a factual issue, the Court is required at this stage to construe it in the light most favorable to the Plaintiff. Consequently, the Court will deny Defendant's Motion to Dismiss with respect to Count II, and will leave this factual dispute for resolution in later proceedings.

In Count III, Plaintiff alleges violations of the FMLA. As with Count II, Defendant's Motion to Dismiss regarding Count III argues only that Plaintiff's claim is time-barred by the statute of limitations. Actions alleging violations of the FMLA must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). In her Complaint, Plaintiff alleges that Defendant violated the FMLA on April 11, 1994, by informing her upon her return to work that her position was no longer available and that no comparable positions were available. Plaintiff also alleges that Defendant violated FMLA when its representative informed Plaintiff that Plaintiff had 60–90 days to find another position. While Plaintiff is unclear about the actual date of this conversation, she alleges that it was "[a]fter about a week as customer service representative." Complaint at 9. Construing this in the light most favorable to the Plaintiff, the Court will assume that this was approximately a week after the later date of April 21, 1994, when Plaintiff was transferred to the White Oak branch. *See* Complaint at 3. Even that date (approx. April 28, 1994) is squarely outside the two-year statute of limitations of the FMLA.

However, Plaintiff claims in her Response that the last of the FMLA violations occurred after her employment had ceased. She states that after she had ceased working for Defendant, Defendant continued to deny her jobs comparable to her previous job and to offer her inferior jobs. Response at 4. She claims that the last such incident occurred on April 21, 1995, when Defendant's representative denied Plaintiff a position as Sales Executive. Plaintiff notes that she filed her Complaint within two years of that date.

In arguing that a violation of the FMLA was possible after the termination of her employee-employer relationship with Defendant, Plaintiff takes a novel position. The Court has considered Plaintiff's argument, and finds it unpersuasive. While Plaintiff's position has not been explicitly addressed previously, this Court believes that the statutory language implicitly limits the scope of any violation to interactions between individuals sharing an employer-employee relationship at the time of the alleged violation. Thus, the date of an individual's employment termination after return from leave would be the latest date on which an FMLA violation against that person could occur. Reading the law otherwise would effectively circumvent the Congressional purpose behind the statute of limitations, as such a reading would enable any potential plaintiff to "revive" a time-barred claim at any time simply by reapplying for her former position. In

order to avoid such an attenuated reading of the statute, this Court finds that the last possible date of an FMLA violation against Plaintiff was the date on which her employment by NationsBank ceased. As discussed above, Plaintiff has presented no possible scenario in which this would have been within two years of the filing of this action. Consequently, Plaintiff's claim under the FMLA is time-barred. Count III of Plaintiff's Complaint is therefore dismissed.

For the reasons cited above, this Court will grant Defendant's Motion to Dismiss with respect to Counts I and III of Plaintiff's Complaint, and will deny that Motion with respect to Count II. A separate Order consistent with this opinion will issue.

### ORDER

In accordance with the Memorandum Opinion, it is this 18th day of October 1996, ORDERED:

1. That Defendant's Motion to Dismiss with respect to Counts I and III, BE, and the same hereby IS, GRANTED; and

2. That Defendant's Motion to Dismiss with respect to Count II, BE, and the same hereby IS, DENIED; and

3. That the Clerk of the Court mail copies of this Order and the Memorandum Opinion to all counsel of record.