[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-15708

_____

D. C. Docket No. 99-01720-CV-H-S

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 27, 2001
THOMAS K. KAHN
CLERK

ARTHUR LEROY SMITH,

Plaintiff-Appellant,

versus

BELLSOUTH TELECOMMUNICATIONS,  INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(November 27, 2001)**

Before EDMONDSON and WILSON, Circuit Judges, and PAUL[*], District Judge.

WILSON, Circuit Judge:

This appeal presents an issue of first impression in this Circuit: whether a

former employee who alleges that his employer retaliated against him in its

_____

[*]Honorable Maurice M. Paul, U.S. District Judge for the Northern District of Florida,
sitting by designation.

decision not to rehire him should be considered an "employee" under the enforcement provision of the Family and Medical Leave Act of 1993 (FMLA) that provides for a private right of action "against any employer . . . by any one or more employees." 29 U.S.C. § 2617(a)(2). The district court held that Arthur Leroy Smith, a former BellSouth employee who applied for reemployment, lacked standing to bring suit because the FMLA affords a private right of action only to individuals who suffer adverse action while they are employed. Because we find that the provision of the FMLA that provides a right of action to "employees" is ambiguous, and that the Department of Labor regulation interpreting the FMLA to protect former employees from discrimination in hiring decisions is reasonable, we must afford this regulation deference. We therefore reverse.

## BACKGROUND

Smith appeals the district court's grant of summary judgment in favor of BellSouth on Smith's FMLA claim. Smith resigned his position as a BellSouth service representative in October of 1998. While employed by BellSouth, he had taken leave under the FMLA. When he reapplied with BellSouth in January of 1999, BellSouth staffing manager Tira Knockett pulled Smith's file and saw that it was marked "Not eligible for rehire." Knockett called one of Smith's former supervisors to discuss why he was not eligible for rehire. She took notes during

2

that conversation, and wrote, "Per [manager]. Took a lot of FMLA, attendance bad, work ethic bad, abusive, temperamental." In large letters at the bottom of her notes, she wrote and underlined, "Do Not Rehire." Smith's former supervisor, Jeremy Duncan, said that he recommended against Smith's rehire because of Smith's poor attendance. The manager of Smith's group, Gary Jordan, said that Smith's attendance problems were "[t]he only reason that he would not have been rehired."

Smith brought suit, alleging race discrimination and violations of the FMLA in BellSouth's decision not to rehire him. The district court granted BellSouth's motion for summary judgment on the race discrimination claims, but asked the parties to submit briefs addressing whether the FMLA's prohibition against retaliation applied to hiring decisions. The district court then granted BellSouth's motion for summary judgment on the FMLA claims, holding that because the FMLA provided a private right of action to "employees" and Smith was not employed by BellSouth when it decided not to rehire him, Smith lacked standing to bring suit. *Smith v. BellSouth Telecomm., Int'l, Inc.*, 117 F. Supp. 2d 1213, 1216–17 (N.D. Ala. 2000).

STANDARD OF REVIEW

3

We review a grant of summary judgment de novo. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Much of this case turns on statutory interpretation – a question of law we also review de novo. *United States v. Hooshmand*, 931 F.2d 725, 737 (11th Cir. 1991).

DISCUSSION

The FMLA entitles a covered employee to take up to twelve weeks of leave in a twelve-month period for the birth or adoption of a child, or the "serious health condition" of the employee or the employee's child, spouse, or parent. *Id.* § 2612(a)(1). To protect this right, the FMLA prohibits an employer from interfering with an employee's attempt to exercise his leave right or retaliating against an employee for opposing practices made unlawful under the FMLA. *Id.* § 2615. If an employer engages in these prohibited acts, the FMLA allows "any one or more employees" to bring suit for damages or equitable relief. *Id.* § 2617(a)(2).

The district court found that Congress's intent was clear from the statute itself – when Congress authorized a private right of action for "employees," it meant only those employees who suffered adverse action *at the time they were employed*. *Smith*, 117 F. Supp. 2d at 1217–18. Since Smith had resigned, the

4

district court found, he was not an "employee" when BellSouth decided not to rehire him, and therefore had no standing to bring suit under the FMLA. *Id.* at 1217–18. Finding no ambiguity in the statute, the district court declined to afford deference to the Department of Labor regulation interpreting the FMLA to prohibit employers from using an employee's past use of FMLA leave as a negative factor in hiring decisions.[1] *Id.* at 1216–18. The district court viewed the regulation as an invalid attempt to expand the protection of the statute beyond its clear meaning. *Id.* at 1216.

The First Circuit, the only circuit court of appeals to date that has addressed this issue, reached the opposite conclusion on similar facts in *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1 (1st Cir. 1998). *Duckworth* likewise involved a former

---

[1]The regulation provides, "An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. . . . [E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . . ." 29 C.F.R. § 825.220(c). The regulation was issued under the authority of 29 U.S.C. § 2654, which provides, "The Secretary of Labor shall prescribe such regulations as are necessary to carry out" the statute.

Because we quoted a portion of this regulation with approval in *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000), *cert. denied,* __ U.S. __, 121 S. Ct. 1998 (2001) (stating "'[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave'"), Smith argues that we are bound by *Brungart* to hold that the FMLA bars discrimination against prospective employees. However, since the plaintiff in *Brungart* was a current employee at the time of the alleged violation, the issue of whether FMLA protection extends to a former employee who has applied for reemployment was not before the court. Since the *Brungart* language relating to prospective employees is dicta, we are free to give the issue fresh consideration here. *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir. 1992).

employee who alleged that his former employer violated the FMLA by refusing to rehire him based on his past use of FMLA leave.[2]  *Id.* at 2–3.  After examining the language of the FMLA and comparing it to similar statutes, the First Circuit decided that the term "employee" was ambiguous and was not clearly limited to current employees.  *Id.* at 9.  The court afforded deference to the Department of Labor regulation interpreting the FMLA to prohibit an employer from taking FMLA leave into account in hiring decisions.  *Id.* at 11.  To define "employee" narrowly such that a former employee who alleges discrimination in the decision not to rehire him lacks standing to bring suit under the FMLA would frustrate the purposes of the Act.  *Id.* at 10–11.  "That interpretation would permit an employer to evade the Act by blacklisting employees who have used leave in the past or by refusing to hire prospective employees if the employer suspects they might take advantage of the Act."  *Id.* at 11.

In this case, the district court rejected the *Duckworth* approach, based in part on a misunderstanding that *Duckworth* was decided under a broader definition of "employee."  *Smith*, 117 F. Supp. 2d at 1216 n.7.  For the reasons set forth below,

---

[2]While Smith resigned, the plaintiff in *Duckworth* volunteered for a layoff.  152 F.3d at 4. Although the district court distinguished *Duckworth* on this ground, we see no reason why this minor difference would justify a different result.  BellSouth's counsel acknowledged at oral argument that while there are minor distinctions between this case and *Duckworth*, we would have to fundamentally disagree with the reasoning in *Duckworth* for BellSouth to prevail on this issue.

we join the First Circuit in holding that a former employee who alleges his former employer refused to rehire him based on his past use of FMLA leave qualifies as an "employee" under § 2617(a)(2).

## I

The two-step process set out in *Chevron U.S.A. Inc. v. N.R.D.C.*, 467 U.S. 837, 842–45 (1984), guides us in determining whether to afford deference to an agency regulation interpreting a statute the agency is charged with administering. First, we ask "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If the will of Congress is clear from the statute itself, our inquiry ends – "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. "[I]f the statute is silent or ambiguous," however, we next ask whether the agency's construction of the statute is reasonable. *Id.* at 843–44. "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844. To determine whether the statutory language is ambiguous, we consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

Addressing the first prong of the *Chevron* inquiry – whether the FMLA provision providing a right of action to "employees" is ambiguous – we begin by examining the language in the enforcement provision itself. Section 2617(a)(2) affords a private right of action to "any one or more employees." The district court concluded that with this language, the FMLA unambiguously "provides a limited enforcement mechanism" only for those individuals "who were in an employment relationship with a defendant at the time the alleged violation of the right occurred." *Smith*, 117 F. Supp. 2d at 1217. The United States Supreme Court recognized in *Robinson* that it might seem natural, at first glance, to read the term "employee" to mean only current employees.[3] 519 U.S. at 341. However, like the *Robinson* court, we find that this initial impression yields under closer analysis. After considering the statutory definition of employee that the FMLA adopted from the FLSA and the expansive interpretation courts have given the term "employee" in other statutes with similar definitions, we find the term "employee" in the enforcement provision of the FMLA to be ambiguous.

The FMLA defines the term "employee" by reference to the definition in the Fair Labor Standards Act (FLSA), which states, "the term 'employee' means any

---

[3]While the *Robinson* court was writing in the Title VII context, it explored some of the same words at issue here – a definition of employee as an "individual employed by an employer." 519 U.S. at 342 (interpreting the definition of employee at 42 U.S.C. § 2000e(f)).

individual employed by an employer." 29 U.S.C. § 203(e)(1).[4]  This definition of employee does not necessarily exclude Smith, since it could be read as referring to someone who previously had been employed by an employer as well as someone who currently is employed.  *See Robinson*, 519 U.S. at 342 (stating that the Title VII definition of employee as "'an individual employed by an employer'" is "consistent with either current or past employment").

The broad interpretation courts have given to the term employee under the FLSA and other statutes with similar definitions further militates against a finding that the term "employee" unambiguously refers only to current employees.  When Congress chose to incorporate the FLSA definition of employee into the FMLA, it presumably was aware of how broadly courts had interpreted the FLSA definition.[5] *See Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be

---

[4]Courts and commentators acknowledge that this definition of employee, by itself, explains little.  *E.g., Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (stating that the same definition of employee in the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1002(6), "is completely circular and explains nothing"); Richard R. Carlson, *Why the Law Still Can't Tell an Employee When It Sees One and How It Ought to Stop Trying*, 22 Berkeley J. Emp. & Lab. L. 295, 296 (2001) (describing the FLSA definition of employee as "baffling in defining who is an 'employee' or what constitutes 'employment'").

[5]The legislative history of the FMLA indicates that when Congress chose to incorporate the FLSA definition, it acknowledged the definition's broad scope.  S. Rep. No. 103-3, at 25–26 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 25 ("The term 'employee' is defined . . . as having the same meaning given such term in . . . the FLSA. This definition is broadly inclusive . . . .").

presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.").  The Supreme Court has described the FLSA definition that Congress chose to incorporate into the FMLA as "exceedingly broad," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985), and has stated that "[a] broader or more comprehensive coverage of employees within the stated categories would be difficult to frame," *United States v. Rosenwasser*, 323 U.S. 360, 362 (1945).

The breadth of the FLSA definition of "employee" was considered and relied upon by the Sixth Circuit in *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 142 (6th Cir. 1977), holding that a former employee who voluntarily left his employment was still an "employee" under the antidiscrimination provisions of the FLSA.[6]  In *Carriage Carpet Co.*, a former employee learned that his former employer, Carriage Carpet Co., told a prospective employer that the former

---

[6]We reject BellSouth's contention that we should not treat *Carriage Carpet Co.* as persuasive authority regarding the scope of the FLSA definition of employee because it was decided under broader definition of employee.  Although the complained of conduct in *Carriage Carpet Co.* occurred when the definition of employee in FLSA provided "'[e]mployee' includes any individual employed by an employer," which in 1974 was amended to "'employee' means any individual employed by an employer," 548 F.2d at 142, the legislative history of the 1974 amendments indicates that the amendments were meant to expand – not narrow – the coverage of the Act.  H.R. Rep. No. 93-913 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2811.  The *Carriage Carpet Co.* court considered the 1974 amendments and decided that since the amendments were meant to expand the coverage of the FLSA and nothing in the House reports explained the reasons for the change, the substitution of "means" for "includes" was of "no particular significance."  548 F.2d at 142.

10

employee had filed a complaint against Carriage Carpet Co. for its failure to pay overtime. *Id*. at 141. Carriage Carpet Co. claimed that since the former employee was not covered by the protection the FLSA extended to "employees" because he had resigned. *Id.* The Sixth Circuit disagreed, stating, "There is nothing in the language or history of this Act to indicate that Congress intended to penalize dissatisfied employees who voluntarily leave an employer by thereafter denying them the protections of [the Act]. There is every reason to conclude precisely the contrary." *Id.* at 147. *Cf. Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972) (Addressing whether former employees who assisted in an FLSA investigation should be protected under the informer's privilege, the court stated that "[t]here is no ground for affording any less protection to defendant's former employees than to its present employees.")

The term "employee" also received an expansive interpretation in the Title VII context. *See Robinson,* 519 U.S. at 346. In *Robinson*, a former employee alleged that his former employer retaliated against him for filing a discrimination charge by giving a negative reference to a prospective employer. *Id.* at 339. The Title VII antiretaliation provision prohibits an employer from discriminating against "employees or applicants for employment" who have opposed unlawful employment practices, but makes no explicit mention of whether the same

11

protection is provided to former employees. 42 U.S.C. § 2000e-3(a). After considering that the Title VII definition of employee – "an individual employed by an employer" – "lacks any temporal qualifier" that would limit the term to current employees, and finding that one of the Title VII remedies – reinstatement – was inconsistent with the interpretation that employee refers only to current employees, the Court decided that the term "employee" was ambiguous. *Robinson,* 519 U.S. at 342. The Court chose to interpret the term to include former employees, because providing no remedy for post-employment retaliation would allow an employer "to retaliate with impunity" against former employees who brought Title VII claims. *Id.* at 346. This would defeat "a primary purpose of antiretaliation provisions: Maintaining unfettered access to statutory remedial mechanisms." *Id.*

Likewise, in employment laws prohibiting discrimination and retaliation in other contexts, courts have concluded that the term "employee" is not limited to current employees. The antiretaliation provision of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621–634, prohibits an employer from discriminating "against any of his employees or applicants for employment" who have opposed practices made unlawful by the ADEA, 29 U.S.C. § 623(d), with "employee" defined as "an individual employed by any employer." 29 U.S.C. § 630(f). Courts have interpreted this definition of "employee" to include former

employees who suffer post-employment retaliatory conduct. *E.g. Passer v. Am. Chem. Soc'y*, 935 F.2d 322, 330 (D.C. Cir. 1991) (holding that a former employee who alleged post-employment retaliation was still an "employee" and remained protected by the ADEA); *EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1088 (5th Cir. 1987) (stating that under the ADEA antiretaliation provision, "[t]he term 'employee' . . . is interpreted broadly: it includes a former employee as long as the alleged discrimination is related to or arises out of the employment relationship").

The term "employee" also has been given an expansive reading under the National Labor Relations Act, 29 U.S.C. § 151–188. *See, e.g., N.L.R.B. v. George D. Auchter Co.*, 209 F.2d 273, 277 (5th Cir. 1954) ("We think that the word 'employee' is broad enough to include, and does include, a job applicant who is discriminately denied employment . . . .").

While cases decided under other employment statutes prohibiting discrimination and retaliation may be instructive, we must be attentive to the way the statutes differ in their language, their purposes, and their scope of protection. *See Pettway v. Am. Cast Iron Pipe Co.*, 411 F.2d 998, 1005–06 (5th Cir. 1969) (looking to the FLSA and the NLRA for guidance in interpreting Title VII, but noting that reliance on other statutes "must necessarily be guarded because the differences between those Acts and Title VII may well outnumber the

similarities"). The term "employee" may have different meanings in different acts, or even in different provisions of the same act. *See Robinson*, 519 U.S. at 341. Thus, we must carefully examine the way the term "employee" is used in context to determine if other provisions of the FMLA, or the structure of the FMLA as a whole, provide a clear answer to the question of whether a former employee who alleges that his employer retaliated against him in its decision not to rehire him is an "employee" with standing to bring suit.

BellSouth argues that the use of the phrase "eligible employee" in the FMLA evinces clear congressional intent to limit the right to bring a private action to individuals in an employer-employee relationship at the time of the alleged violation. The FMLA defines "eligible employee" as "an employee who has been employed – (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). The term "eligible employee" does not appear in the prohibited acts section, which prohibits discrimination against "any individual" for opposing employment practices made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). The provision providing for a private right of action also does not use the term "eligible employee," but instead states that "any one or more employees" may bring suit. *Id.*

14

§ 2617(a)(2). The term "eligible employee" does, however, reappear in the section describing employer liability in a civil action by employees, which provides that an employer who violates the FMLA "shall be liable to any eligible employee affected" for damages or equitable relief. *Id.* § 2617(a)(1).

BellSouth argues that the phrase "eligible employee" differentiates the FMLA from statutes such as Title VII or the ADEA – while Title VII and the ADEA define the scope of protection based on characteristics of the employee, the FMLA defines the scope of protection based on the existence of a particular employer-employee relationship. BellSouth argues that the FMLA's focus on the existence of a particular employer-employee relationship means Congress did not intend to provide a right of action to an employee who suffers discrimination or retaliation after the employer-employee relationship ends. BellSouth cites *Brohm v. JH Properties*, *Inc.*, 149 F.3d 517 (6th Cir. 1998), and *Wenzlaff v. NationsBank*, 940 F. Supp. 889 (D. Md. 1996), to support this view. Both of these cases are distinguishable from the case at hand.

In *Brohm*, a former employee alleged that his employer violated the FMLA by refusing to provide medical leave and refusing to allow him to return after treatment for a medical condition. 149 F.3d at 523. The district court found that there was no FMLA violation because the former employee never requested leave

15

prior to his termination. *Id.* Affirming, the Sixth Circuit stated, "[T]he statute affords a remedy only to eligible *employees*. Brohm was not an 'eligible employee' at the time he received medical attention for his condition. He had already been terminated a week earlier." *Id.* (citation omitted). While BellSouth argues that this case stands for the broad proposition that all FMLA rights cease after the termination of employment, the Sixth Circuit did not address the question of discrimination resulting from the exercise of leave rights; it instead addressed the right to take leave, which obviously cannot be exercised after the termination of an employment relationship.

In *Wenzlaff,* the plaintiff, who had been terminated, claimed that her employer violated the FMLA by continuing "to deny her jobs comparable to her previous job and to offer her inferior jobs." 940 F. Supp. at 892. In her complaint, the plaintiff alleged that her employer violated the FMLA by telling her, after she returned from pregnancy leave, that her position was no longer available. *Id.* The defendant filed a motion to dismiss because the alleged violation occurred outside the two-year statute of limitations. In response, the plaintiff claimed that her action was not time-barred, because after she stopped working for the defendant, the

16

defendant continued to deny her comparable jobs.[7] *Id.* The court rejected this attempt to avoid the FMLA's statute of limitations, stating that the plaintiff "takes a novel position" in arguing that the FMLA provides a remedy for violations that occur after the employer-employee relationship has terminated, and finding that "the statutory language implicitly limits the scope of any violation to interactions between individuals sharing an employer-employee relationship at the time of the alleged violation." *Id.*

While *Brohm* and *Wenzlaff* might offer some support for reading "eligible employee" to mean the right to bring suit under the FMLA is limited to those who suffer adverse employment action during their employment, other readings are possible, and given the statute's remedial purpose, perhaps more reflective of congressional intent. We find the First Circuit's rationale in *Duckworth* to be more persuasive and more applicable to the issue at hand.

---

[7]BellSouth relies on cases similar to *Wenzlaff* in arguing that Smith's claims should be barred by the release he signed when he resigned, waiving his right to sue on any then-existing claims. BellSouth relies, for instance, on *Burnam v. Amoco Container Co.*, 755 F.2d 893, 894–95 (11th Cir. 1985) (per curiam), where a plaintiff whose discriminatory discharge claim was time-barred attempted to circumvent the ADEA's time limitations by claiming that the refusal to rehire her was a new act of discrimination. Here, the district court properly distinguished *Burnam* in its order granting partial summary judgment on Smith's race discrimination claims, since Smith voluntarily resigned and was not trying to resurrect a time-barred discriminatory discharge claim. We agree with the district court's conclusion that the release did not waive Smith's right to sue for BellSouth's subsequent post-termination conduct.

In *Duckworth*, the First Circuit rejected an employer's argument that the use of the phrase "eligible employee" indicates Congress intended that only individuals who were employed at the time of the alleged violation could bring suit.

> [The employer's] argument necessarily assumes that the employee must be "eligible" at the time of the adverse action, rather than at the time the employee wishes to take leave. This reading is far from mandated by the statute's language, and strikes us as unlikely. The statute makes any employer "liable to any eligible employee affected" by a violation of the Act. This language, read naturally, means that an employee must be "eligible" at some time and that he or she must have been "affected" by the employer's action. The statute does not make clear whether . . . there is any required temporal connection between "eligible" and "affected."

152 F.3d. at 8 (quoting 29 U.S.C. § 2617(a)(1)). In part because courts have arrived at different understandings of the implications of this phrase, we cannot say that the "eligible employee" language unmistakably indicates congressional intent to allow only those individuals who suffer adverse employment action while presently employed to bring suit.

If the "eligible employee" provision does not provide a clear answer to whether Congress intended to afford a private right of action to an individual such as Smith, the provision describing the equitable remedies available under the FMLA – "employment, reinstatement, and promotion" – only adds to the ambiguity. 29 U.S.C. § 2617(a)(1)(B). If Congress intended to limit the right to bring suit under the FMLA to current employees, the inclusion of "employment" as

18

an equitable remedy is puzzling. The *Duckworth* court found that equitable remedies available under the FMLA indicate that Congress intended an expansive interpretation of the term "employee." 152 F.3d at 8–9. "[E]ach of the three remedies most naturally refers to employees who are in different temporal circumstances – one 'promot[es]' a current employee, one 'reinstate[s]' a former employee, and one 'employ[s]' a prospective employee." *Id*. at 8 (second, third, and fourth alterations in original).

BellSouth argues that such a broad interpretation of employee is not mandated by the remedies provision, because both "reinstatement" and "employment" can be read as remedies for current employees. On return from protected leave, a current employee is entitled to either return to his previous position or, alternatively, to be given an equivalent position. 29 U.S.C. § 2614(a). If returning to the previous position is "reinstatement," BellSouth argues, then returning to an equivalent position is "employment." Though it might be possible to read the remedy of "employment" to be a shorthand reference to a current employee's right to be placed in an equivalent position on return from leave, this seems to be quite a stretch from the way the word "employment" is generally used.

BellSouth next urges that the congressional intent to exclude former employees and prospective employees can be gleaned by the words that Congress

19

left out of the FMLA. If Congress intended for someone such as Smith to have standing to bring suit, BellSouth urges, Congress would have expressly singled out "job applicants" for protection as it did in Title VII and the ADEA. We are wary of reading so much into the absence of words. In *Robinson*, although Title VII expressly protected "applicants" and "employees" from discrimination and made no mention of former employees, the Court declined to draw the "negative inference that inclusion of the term 'applicants' demonstrates intentional exclusion of former employees." *Robinson*, 519 U.S. at 344–45. Likewise, we are reluctant to view Congress's choice to single out "applicants" for protection in other statutes, but not here, as an unmistakable expression of congressional intent to protect only current employees. Especially since Congress presumably knew that the term "employee" had been interpreted broadly to include former and prospective employees in other statutes, Congress may have chosen such an "open-ended term" because it wanted to "entrust that policy choice to the agency." *Duckworth*, 152 F.3d at 7.

In light of the remedial purposes of this statute, a broad definition of employee might seem to be more in line with congressional intent than the narrow definition BellSouth urges. However, after exploring the statutory definition of employee and examining the term in the context of the FMLA as a whole, we

20

conclude that the provision of the FMLA that affords a private right of action to "employees" is ambiguous as to whether "employee" includes an individual such as Smith. Therefore, we now must turn to the second step of the *Chevron* inquiry, and ask whether the Department of Labor's interpretation of the statute is reasonable. 467 U.S. at 843. "If the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design, we give that reading controlling weight, even if it is not the answer" that we would have reached in interpreting the statute ourselves. *Regions Hosp. v. Shalala*, 522 U.S. 448, 457 (1998).

The regulation on which Smith relies prohibits an employer from discriminating against "employees or prospective employees" who have used FMLA leave, and prohibits an employer from using "the taking of FMLA leave as a negative factor in employment actions, such as hiring . . . ." 29 C.F.R. § 825.220(c). In determining whether this is a reasonable interpretation of the FMLA, we must consider Congress's purposes in enacting the FMLA.

The FMLA was meant "to balance the demands of the workplace with the needs of families" by ensuring the availability of "reasonable leave" for employees who need time for health or family reasons. 29 U.S.C. § 2601(b)(1)–(2). If former employees like Smith knew they would have no remedy if their former employers

retaliated against them for their past use of FMLA leave, it would tend to chill employees' willingness to exercise their protected leave rights and would work against the purpose of the FMLA.

In light of the broad interpretation of the definition of employee and Congress's interest in ensuring that employees may freely exercise the leave rights that the FMLA creates, we find the Department of Labor's interpretation of the FMLA to be reasonable.

Because we find that the provision of the FMLA affording a private right of action to employees is ambiguous, and because the Department of Labor regulation prohibiting an employer from considering an employee's past use of FMLA leave in hiring decisions is reasonable, we must afford this regulation *Chevron* deference. We therefore conclude that Smith has standing to bring suit under the FMLA.

## II

BellSouth's next major contention is that refusing to rehire an individual based on his past use of FMLA leave is not a prohibited act under the FMLA. BellSouth points out that while Title VII declares that "to fail or refuse to hire" for impermissible reasons is an unlawful employment practice, 42 U.S.C. § 2000e-

2(a)(1), the FMLA does not specifically prohibit an employer from refusing to hire employees based on their past use of FMLA leave.

Smith frames his claim as a "retaliation" claim. We recognized in *Brungart* that while the FMLA "uses the language of interference, restraint, denial, discharge, and discrimination, not retaliation, . . . . nomenclature counts less than substance. And the substance of the FMLA . . . is that an employer may not do bad things to an employee who has exercised or attempted to exercise any rights under the statute." 231 F.3d at 798 n.5. The FMLA prohibits employers from discriminating against employees who exercise their leave rights. *Id.* BellSouth's argument that its refusal to rehire is not a prohibited act is predicated on its assertion that Smith is not an "employee" under the FMLA. We have decided that Smith, a former employee who has applied for reemployment, is an "employee" under the FMLA. If Smith proves that his past use of FMLA leave was a motivating factor in BellSouth's refusal to rehire him, this is precisely the type of discrimination that the FMLA seeks to prohibit.

## III

Smith and BellSouth each claim to be entitled to summary judgment on the FMLA claims based on the facts in the record. When evaluating a FMLA retaliation claim, we use the burden shifting analysis set out in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973).  *Brungart*, 231 F.3d at 798.  To establish a prima facie case of retaliation, a plaintiff must show that he engaged in statutorily protected conduct, he suffered adverse action, and there is a causal connection between the protected conduct and the adverse action.  *Id.*  If the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action.  *McDonnell Douglas Corp.,* 411 U.S. at 802.  If the defendant does so, the plaintiff must show the defendant's proffered reason for the adverse action is pretextual.  *Id.* at 804.

Smith argues that the only evidence regarding why Smith was not rehired shows the decision was based on his past use of FMLA leave, and BellSouth argues that Smith has not produced evidence that demonstrates BellSouth's proffered nondiscriminatory reason for not rehiring him – poor attendance unrelated to FMLA leave – was pretextual.

In her notes on her conversation with Smith's supervisor about why Smith's file was marked "Not eligible for rehire," Knockett included "took a lot of FMLA" along with other reasons.  A reasonable jury could conclude that BellSouth impermissibly counted Smith's past use of FMLA leave against him in its decision not to rehire him.  A genuine issue of material fact remains:  whether BellSouth refused to rehire Smith based on his past use of FMLA leave, or whether it based

24

its decision on non-FMLA attendance problems and other factors. Hence, summary judgment is inappropriate.

## CONCLUSION

We hold that the district court erred in deciding that because Smith was not employed by BellSouth when it made the decision not to rehire him, Smith was not an "employee" and lacked standing to bring suit under the FMLA. Since the provision of the FMLA that affords a private right of action to "employees" is ambiguous, and the Department of Labor regulation prohibiting an employer from considering an employee's past use of FMLA leave in hiring decisions is a reasonable interpretation of the statute, we must afford that regulation *Chevron* deference.

Accordingly, the district court's order granting summary judgment is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.