David L. MORRISON, Plaintiff,

v.

AMWAY CORPORATION, n/k/a Alticor, Inc.; Magic Carpet Aviation, Inc.; Rdv Sports, Inc.; and Harry Mitchel, Defendants.

No. 6:01–CV–749–ORL22JGG.

United States District Court, M.D. Florida, Orlando Division.

Sept. 17, 2003.

Daniel J. O'Malley, Esq., David H. Simmons, Esq., DeBeaubien, Knight, Simmons, Mantzaris & Neal, LLP, Orlando, FL, for Plaintiff.

Donald E. Christopher, Esq., Richard C. Swank, Esq., Litchford & Christopher, P.A., Orlando, FL, for Defendants.

### ORDER

CONWAY, District Judge.

## I. INTRODUCTION

This cause comes before the Court for consideration of the Defendants', Amway Corporation, n/k/a Alticor, Inc.; Magic

Carpet Aviation, Inc.; RDV Sports, Inc.; and Harry Mitchel (collectively "the Defendants"), Motion for Summary Judgment (Doc. No. 49), filed June 9, 2003, to which the Plaintiff, David L. Morrison, responded (Doc. No. 70) on August 11, 2003. Having reviewed the motion and memoranda, this Court **GRANTS** the Defendants' Motion for Summary Judgment (Doc. No. 49).

## II.  BACKGROUND

On June 22, 2001, the Plaintiff, David L. Morrison ("Morrison"), filed this action alleging unlawful retaliation in violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* The complaint named Amway Corporation, n/k/a Alticor, Inc. ("Amway"), Magic Carpet Aviation, Inc. ("Magic Carpet"), RDV Sports, Inc. ("RDV"), and Harry Mitchel ("Mitchel") as Defendants. Amway is a Delaware corporation with its principal place of business in Ada, Michigan. Magic Carpet—an air charter service owned by Amway—is a Delaware corporation with its principal place of business in Orlando, Florida. RDV is a Michigan corporation with its principal place of business also in Orlando, Florida. Mitchel is the Director of Aviation at Magic Carpet.

Orlando Magic, Ltd., a unit of RDV, owns the Orlando Magic ("the Magic"), a franchise of the National Basketball Association ("NBA"). During the course of the season, the Magic travel to away games on a regular basis. To transport the team, the Orlando Magic, Ltd. entered into a contractual agreement with Magic Carpet. Under the terms of that agreement, the Magic travel on a Boeing–737 aircraft operated by Magic Carpet.

From September of 1997 through March of 2000, Morrison was employed by Magic Carpet as a Senior First Officer (co-pilot). As such, Morrison reported directly to Mitchel. According to Morrison, throughout his employment at Magic Carpet, he suffered from clinical depression; a disorder that significantly affected his ability to perform the functions of his job. Due to his illness, Morrison requested a leave of absence on several occasions. On October 27, 1999, Morrison met with Mitchel and requested that he be permitted to take his four accumulated weeks of vacation time in order to deal with his depression and emotional problems. Mitchel refused to grant Morrison more than two weeks of vacation time, however, and referred him to a mental health counselor in the Amway Employee Assistance Program.

Morrison and Mitchel met again on November 9, 1999. Morrison again requested a leave of absence in order to deal with his problems. Morrison alleges that Mitchel flatly denied his request and told him that if he took any more time off from work to treat his depression, he would not have a job when he returned.

On March 1, 2000, Morrison met with Mitchel once again. At that time, Mitchel confronted Morrison about pornographic images found on his computer in violation of Magic Carpet's company policy. Mitchel encouraged Morrison to resign from his position on account of those images.

On or about March 3, 2000, Morrison requested another leave of absence. Instead of granting the leave of absence, Magic Carpet terminated him by a letter signed by Mitchel. The stated reason for the termination was the storage of pornographic images in violation of company policy.

In response to that termination, Morrison filed the instant action alleging unlawful retaliation in violation of the FMLA. The Defendants now move for summary judgment on that claim on the grounds that Morrison is not an "eligible employee" under the FMLA.

## III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it is one that might affect the outcome of the case. *See id.* The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those materials that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant satisfies this requirement, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To meet this burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed.R.Civ.P. 56(e). Nor may the non-moving party rely on a mere scintilla of evidence supporting their position. *See Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). Rather, for a court to find a genuine issue for trial, the non-moving party must establish, through the record presented to the court, that it is capable of providing evidence sufficient for a reasonable jury to return a verdict in its favor. *See Cohen v. United Am. Bank*, 83 F.3d 1347, 1349 (11th Cir. 1996). When considering a motion for summary judgment, a court views all of the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir.1993).

## IV. LEGAL ANALYSIS

### A. GENERALLY

The FMLA provides eligible employees with up to twelve weeks of leave in a twelve-month period for the birth or adoption of a child, or the "serious health condition" of the employee or the employee's child, spouse, or parent. 29 U.S.C. § 2612(a)(1). To protect this right, the FMLA prohibits employers from interfering with an eligible employee's attempt to exercise a leave right or retaliating against an employee for opposing practices made unlawful under the FMLA. *Id.* § 2615. If an employer engages in these prohibited acts, the FMLA allows eligible employees to bring suit for damages or equitable relief *Id.* § 2617(a)(2); *see also Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1305 (11th Cir.2001).

The FMLA defines an "eligible employee" as an individual who has been employed for at least 12 months by the employer and for at least 1,250 hours of service with the employer from whom leave is requested. 29 U.S.C. § 2611(2)(A). However, the term "eligible employee" excludes "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B). Thus, in order to satisfy the "eligible employee" requirement, Morrison must show that he was employed at a worksite where at least 50 employees worked, or that his employer employed 50 people within 75 miles of his worksite.

Morrison's worksite was the Magic Carpet hanger in Orlando, Florida, where the company's Boeing–737 is serviced and housed. At the time of Morrison's employment, Magic Carpet had a total of fourteen employees—nine full-time and five part-time. Because that number is insufficient to satisfy the "eligible employee" requirement, Morrison is obligated to show that his employer employed at least fifty employees within 75 miles of the Magic Carpet hanger. Magic Carpet, however, does not have any additional worksites within that area. Because Magic Carpet was a wholly owned subsidiary of Amway at all times relevant to this action, Defendants concede that Amway and Magic Carpet were Morrison's joint employers. Amway is a sizeable company that employs hundreds of people; however, it does not have any worksites within 75 miles of Magic Carpet. Thus, the only way that Morrison can establish his eligible employee status is to prove that RDV, which did employ at least fifty employees within seventy-five miles of the Magic Carpet worksite, is also his employer.

## B. DIRECT EMPLOYER

The FMLA defines the term "employer" as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Incorporating that definition, Morrison alleges that RDV acted as his employer in the following ways: (1) by holding a considerable amount of influence over Magic Carpets' employment decisions, including, but not limited to, decisions concerning his retention; (2) by asking him to introduce himself as a new RDV employee at an RDV organizational meeting; (3) by requiring him to wear an "RDV Sports, Inc." identification badge while he was working for Magic Carpet; (4) by giving him a salary bonus following the Magic's playoff appearance in the 1998–99 season; (5) by

listing him and other Magic Carpet employees in the staff directory of the Magic's Media Guide; (6) by offering him a discount at the Magic's "FanAttic" retail store; (7) by providing him with tickets to Magic games; (8) by inviting him and other Magic Carpet employees to RDV social functions including RDV's annual summer picnic and RDV's annual holiday party; (9) by providing Magic Carpet employees with Magic neckties and parkas to be worn while transporting the Magic; (10) by asking him to volunteer to assist in the Magic's annual "Black Tie and Tennies" event; and (11) by giving him holiday gifts from Amway's catalogue and a Tiffany crystal bowl in 1999 with the inscription, "Orlando Magic, A Magical Decade 1989–1999." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Request for Oral Argument (Doc. No. 70) at 5–7.

When considering whether an entity is an "employer" a court is required to analyze the "total employment situation." *Welch v. Laney,* 57 F.3d 1004, 1011 (11th Cir.1995) (quoting *Wirtz v. Lone Star Steel Co.,* 405 F.2d 668, 669–70 (5th Cir.1968)). That requires consideration of (1) whether the employment took place on the alleged employer's premises; (2) how much control the alleged employer exerted on the employee; and (3) whether the alleged employer had the power to fire, hire, or modify the employment condition of the employee. *See id.*

Applying these standards, the Court finds that there is no genuine issue of material fact with respect to Morrison's employment status. No reasonable jury could return a verdict finding that RDV was Morrison's direct employer.

### 1. Premises

Morrison first contends that his employment took place on RDV's premises. In

her deposition, however, Lorisse Garcia—the Vice President of Human Resources at RDV—testified that RDV had no ownership interest in Magic Carpet. And Morrison has responded with no evidence to the contrary. Instead, he merely calls attention to the fact that the plane was painted in Magic colors; that a Magic logo was etched onto a partition within the plane; and that the plane was mentioned in the Magic's Media Guide as "RDV Sports' Boeing 737." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Request for Oral Argument (Doc. No. 70) at 7. These representations are insufficient to create a genuine issue of material fact with respect to Morrison's worksite.

## 2. Control

Morrison next contends that RDV exerted "substantial control" over his employment at Magic Carpet. In that connection, he alleges that Bob Vander Weide and Rich DeVos, the respective President and Chairman of RDV, had the power to fire him and other Magic Carpet employees. *See id.* at 8. He further alleges that RDV controlled his employment by providing him "with a bonus, free Magic season tickets, and an employee discount at its Fan-Attic stores." *Id.* Finally, Morrison argues that RDV exerted control by inviting him to RDV holiday parties and by requiring him to wear a RDV identification badge, Magic neckties and parkas. *See id.*

Preliminarily, this Court rejects the notion that affording free tickets, employee discounts, invitations to parties, and the like evinces control. Providing gratuities such as those is a common practice in the business world, and, for that reason, this Court finds that it does not exhibit the type of control contemplated by the employment statutes. The idea that complimentary tickets and deminimis gifts morph the employees of one company into the employees of another is facetious at best.

This Court finds the Plaintiff's remaining examples of control equally unavailing. First, the record reflects that Bob Vander Weide and Rich DeVos were clients of Magic Carpet; neither held a position there. And while it is feasible that a business's clients could influence employment decisions at the business—insofar as they could threaten to take their business elsewhere in the absence of a change in employment conditions—that notion is too attenuated to constitute control. This is particularly the case here where there is no evidence that Vander Weide or DeVos ever influenced or sought to influence employment decisions at Magic Carpet. Instead, the evidence indicates that hiring, firing, and other decisions concerning the employees of Magic Carpet, including the Plaintiff, were made solely by employees of Magic Carpet.

Second, with respect to the bonus Morrison received, the record reflects that it was given to Magic Carpet employees, not at the behest of RDV, but rather, by the Magic Players themselves, who chose to reward those individuals and entities who had supported them throughout the season. Moreover, while Magic Carpet employees were invited to RDV events, attendance was not mandatory. And finally, with respect to Morrison's allegation that he had to wear a RDV identification badge, Magic neckties, and a Magic parka, there is no evidence that those uniforms were required by RDV, as opposed to Magic Carpet.

Thus, it is clear that RDV had no actual control over Morrison or any other Magic Carpet employee.

## 3. Modification of Employment

Finally, Morrison alleges that RDV had the power to modify his employment condition.

The ability to 'modify' an employee's employment condition pertains to the abili-

ty to hire and fire the employees. And, as discussed previously, it is clear that RDV had no ability to hire and fire Magic Carpet's employees. Mitchel testified that he had the authority to hire and fire Magic Carpet employees. *See* Doc. No. 24 at 7. He, in turn, was required to report to the Amway human resources department concerning personnel issues. *See id.* at 8, 79. Nothing in the evidence suggests that RDV was ever consulted about personnel decisions concerning Magic Carpet employees.

The Court therefore concludes that RDV was not Morrison's direct employer because his employment did not take place on the RDV's premises, and because RDV had neither the authority to control him or the ability to modify his employment condition.

## C. INTEGRATED EMPLOYER

■ Alternatively, Morrison also attempts to characterize Magic Carpet, Amway, and RDV as his "integrated employer." Under the 'integrated employer' test, several companies may be considered so interrelated that they constitute a single employer." *Hukill v. Auto Care,* 192 F.3d 437, 442 (4th Cir.1999). The Department of Labor's "integrated employer" test requires the courts to consider whether two or more employers have: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *Id.* (citing 29 C.F.R. § 825.104(c)(2)). While each of these factors is to be considered, control of labor operations is the most important factor. *See id.*

■ Morrison first argues that Amway and Magic Carpet had common management at all times relevant to this action. Defendants have conceded this point. However, Morrison does not claim, and the evidence does not show, that RDV shared common management with either Amway or Magic Carpet.

Morrison next claims that Amway, RDV and Magic Carpet had interrelated operations. Morrison bases this claim on the fact that "RDV looked to Amway's methodologies in making major organizational decisions." Doc. No. 70 at 14. Lorisse Garcia acknowledge in her deposition that RDV used Amway as a "benchmark" in making decisions. *See* Doc. No. 26 at 38. She further testified that when RDV was looking to restructure its operations, representatives from RDV met with Amway representatives in order to better understand Amway's organizational structure. *See id.* at 51. However, Garcia also testified that RDV looks to *several* entities for benchmarking purposes, including seven NBA teams, Disney, Sea World, Universal, various banks, and healthclubs. *See id.* at 39. It would stretch credibility to argue that RDV has interrelated operations with each of these companies. Yet, if the Court were to accept Morrison's argument that RDV and Amway have interrelated operations because RDV looks to Amway's methodologies, it would also have to accept that RDV has interrelated operations with each of the other entities. It is a common practice for companies to emulate the business strategies of other companies when making their own decisions. Such is the case with RDV and Amway. Nevertheless, all the evidence points to the conclusion that Amway and RDV operated "separately and distinctly." *Hukill,* 192 F.3d at 443.

Morrison also claims that RDV and Magic Carpet's operations were interrelated because "RDV provided various employee benefits to Plaintiff and served as his employer," and because Magic Carpet "served as a cog in the wheel of the Orlando Magic, Ltd." Doc. No. 70 at 15. First, this Court has already determined that

RDV was not Morrison's employer and did not provide him the kind of employee benefits that could reasonably be deemed "compensation" for his services. Second, while it is true that the flights provided by Magic Carpet were an integral part of the Magic's operations, it must be noted that this was a service contracted for by RDV and Magic Carpet. Morrison argues that, by providing this service, Magic Carpet was no different than the RDV human resources department or the RDV accounting department. Such a view is simplistic and incorrect. The accounting and human resources department are a part of RDV's organizational structure; Magic Carpet is not. Furthermore, the evidence shows that: RDV never provided any cash funding to Magic Carpet (Doc. No. 24 at 82); Amway, not RDV, was responsible for filing Magic Carpet's tax returns (Doc. No. 24 at 57); Amway was responsible for approving Magic Carpet's budget (Doc. No. 24 at 10); and Amway was responsible for making personnel decisions concerning Magic Carpet employees. Doc. No. 24 at 79. Thus, nothing in the evidence suggests that RDV and Magic Carpet's operations were so interrelated that RDV was actually responsible for operating Magic Carpet.

With respect to labor operations, it is clear that RDV did not share centralized labor operations with either Amway or Magic Carpet. The evidence establishes that the human resources departments of Amway and RDV were completely separate. Each company distributed its own employee handbook and had its own employee assistance program. *See id.* at 107, 128. Furthermore, Lorisse Garcia testified that she never had discussions with another Amway employee concerning either employment issues or employment relations. *See* Doc. No. 26 at 27–28. It is clear that Magic Carpet's labor operations were controlled by Amway, not RDV. The Documents submitted with Mitchel's deposition show that Morrison's employment application and performance evaluations were on Amway forms. There is simply no evidence that Amway and RDV's labor operations were centralized.

Finally, with respect to ownership, the evidence shows that Rich DeVos has common ownership of both Amway and RDV. However, this showing is not enough to create a genuine issue of material fact seeing that Amway and RDV do not have common management, interrelated operations, or centralized control of labor operations. Accordingly, the Court determines that Amway, Magic Carpet, and RDV are not "integrated employers" for FMLA purposes.

## D. JOINT EMPLOYERS

■ Finally, Morrison argues that RDV, Amway, and Magic Carpet were his "joint employers." The Department of Labor determined that separate entities can be found to be joint employers if: (1) the employers have an agreement to share or interchange an employee's services; (2) one employer acts directly or indirectly in the interests of the other employer; or (3) the employers are deemed to share control of the employee. *See* 29 C.F.R. § 825.106(a). The Court believes that the instant case fits none of those criteria. Morrison argues that "RDV and Magic Carpet clearly had an arrangement to share Plaintiff's and other Magic Carpet pilots' services." Doc. No. 70 at 9. In support of this contention, Morrison points to the fact that, at certain points during his employment, Orlando Magic, Ltd. and Magic Carpet had a "Timesharing Agreement" for flight services. The agreement was essentially a lease between the parties, whereby RDV leased the Boeing–737 and its crew. However, Morrison emphasizes the word "share" in "timeshare" and attempts to argue that this is indicative of

the fact that Magic Carpet and RDV had an agreement to share the services of the pilots.

 The Court believes Morrison's argument is without merit. "[T]he joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing essential terms and conditions of employment." *National Labor Relations Board v. Browning–Ferris Industries*, 691 F.2d 1117, 1123 (3d Cir. 1982). The mere fact that RDV leased the Magic Carpet aircraft and crew does not establish that RDV had any authority to govern the terms and conditions of the Magic Carpet pilots' employment. Because RDV had neither actual control nor the "authority or power to control" Magic Carpet's employees, RDV was not a joint employer with Magic Carpet or Amway. *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1361 (11th Cir.1994).

### V. CONCLUSION

In conclusion, RDV was not Morrison's direct employer, and also was not Morrison's employer under an integrated or joint employer analysis. Because Morrison worked at a worksite with less than 50 employees, and because his employer did not employ additional employees within 75 miles of his worksite, he was not an "eligible employee" as that term is defined by the FMLA at the time of his termination.

Based on the foregoing, it is **ORDERED** that:

1. The Defendants', Amway Corporation, n/k/a Aliticor, Inc.; Magic Carpet Aviation, Inc.; RDV Sports, Inc.; and Harry Mitchel, June 9, 2003 Motion for Summary Judgment (Doc. No. 49) is **GRANTED**.

2. The Clerk shall enter a final judgment providing that the Plaintiff, David L. Morrison, shall take nothing on his claim against the Defendants, Amway Corpora-

tion, n/k/a Aliticor, Inc.; Magic Carpet Aviation, Inc.; RDV Sports, Inc.; and Harry Mitchel. The judgment shall further provide that the Defendants shall recover their costs arising from this action.

3. This case shall be removed from the trial calendar.

4. The clerk is directed to close the file.