**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 18, 2001**


PETRONELLA BATSHON and BENSON
RUBIN,

    Plaintiffs-Appellants,

v                         No. 116895

MAR-QUE GENERAL CONTRACTORS, INC.,
DEWEY STEWART and EXPERT PLUMBING,
INC.,

    Defendants-Appellees.

_____

PER CURIAM

The plaintiffs sued the defendants, who successfully interposed a release executed by the plaintiffs and an insurance company. Summary disposition was granted in favor of the defendants, and the circuit court and the Court of Appeals affirmed. We reverse on the ground that the release did not limit the potential liability of the defendants.

I

Plaintiffs Petronella Batshon and Benson Rubin owned a

house in Southfield.[1]  An October 1993 fire did substantial damage to the structure.  Working from several trucks, firefighters evidently pumped a significant amount of water into the building.  Perhaps in connection with the fire, the basement flooded knee-deep several weeks later.

Substantial reconstruction work was done in early 1994. The cost was apparently borne by AAA of Michigan, the insurer of the house.

As the reconstruction work was being done, the plaintiffs decided to connect with the city water line.  They contracted with Mar-Que General Contractors.  Mar-Que, in turn, subcontracted with Dewey Stewart to dig a trench for the pipe, and with Expert Plumbing, Inc., to install the water line.

In March 1994, the basement walls of the house buckled, causing additional damage.  This suit is premised on the plaintiffs' allegation that this damage was caused by the negligence of Mar-Que and its subcontractors (Stewart and Expert Plumbing) in the course of installing the water line.

Evidently, the plaintiffs' initial conclusion had been that the collapse of the walls was the result of the fire and the efforts of the fire department.  With the assistance of counsel, they sent AAA an April 1994 letter demanding that AAA pay a significant portion of the $27,900 bill for repairing the walls.

---

[1]  We present the facts from the materials at hand, cautioning that this case has not been tried.

The negotiations with AAA led to a $3,000 settlement, in exchange for a May 1994 release. The meaning of that release is the central question in this case.

In October 1995, the plaintiffs filed in district court a complaint against Mar-Que, Stewart, and Expert Plumbing.[2] The defendants responded with motions for summary disposition under MCR 2.116(C)(7), saying that the language of the release barred the plaintiffs' claim.

The district court granted the motions, agreeing that the release barred the claims against the present defendants. The court later denied reconsideration. The plaintiffs appealed, but the circuit court affirmed.

The Court of Appeals also affirmed,[3] and the plaintiffs now seek leave to appeal in this Court.

II

The release was executed on a generic printed form that bore the title, "RELEASE COVERING ALL CLAIMS." AAA's name was typed into a blank space, so that the plaintiffs were releasing "*AAA of Michigan*, his/her/their executors, administrators, and all persons or organizations responsible

---

[2] The materials at hand indicate that Expert Plumbing filed a cross-claim against Mar-Que and Stewart.

[3] Unpublished opinion per curiam, issued April 25, 2000 (Docket No. 212062). Initially, the Court of Appeals had denied leave to appeal. Unpublished order, entered June 30, 1997 (Docket No. 201729). However, this Court remanded the case to the Court of Appeals for consideration as on leave granted. 457 Mich 875 (1998).

for his/her/their acts from all claims and causes of action for all injuries, losses, and damages sustained by [the plaintiffs], arising from an incident, all or part of which occurred on or about the *23rd* day of *March*, 19*94*, at or near *[the plaintiffs' Southfield address]*." The printed form also contained the language, "I intend this document to operate as a release for all consequences of the injuries, losses and damages sustained by me," after which were typed the words "in regards to the basement walls whether or not I am presently aware of such consequences."

The defendants argue that the release covers "all persons." Agreeing, the Court of Appeals said that "[t]he word 'all' encompasses the broadest possible classification." The plain language of the release does not, however, cover all persons and organizations.[4] The key sentence in the release agreement provides for a "release of AAA of Michigan,

---

[4] We agree with these statements made by the Court of Appeals in the present case:

> We review a trial court's decision on a motion for summary disposition de novo. *Harrison v Olde Financial Corp*, 225 Mich App 601, 605; 572 NW2d 679 (1997).

> The validity of a release turns on the intent of the parties. A release must be fairly and knowingly made to be valid. *Skotak v Vic Tanny Int'l, Inc*, 203 Mich App 616, 618; 513 NW2d 428 (1994). If the language of a release is clear and unambiguous, the intent of the parties is ascertained from the plain and ordinary meaning of the language. *Wyrembelski v St Clair Shores*, 218 Mich App 125, 127; 553 NW2d 651 (1996).

4

*his/her/their* executors, administrators, and all persons or organizations responsible for *his/her/their* acts." The first use of the term "his/her/their"[5] unmistakably is as a substitute for repeating AAA of Michigan. It is likewise plain that when the term "his/her/their" is used again in the same sentence that it is also a substitute for AAA of Michigan. See *Henderson v State Farm Fire & Casualty Co,* 460 Mich 348, 356; 596 NW2d 190 (1999) (explaining that a court should "give contextual meaning to [a contractual] phrase to determine what the phrase conveys to those familiar with our language and its contemporary usage"). It follows that this printed release form is not a complete release of liability with respect to all parties in connection with the incident underlying the release, but rather pertains to "all persons or organizations" only insofar as they might be "responsible for [AAA's] acts."[6]

The nature of the potential claim being released was stated in terms that were expansive ("I intend this document to operate as a release for all consequences of the injuries, losses and damages sustained by me in regards to the basement

---

[5] The drafters of this form alternatively linked male, female, and plural pronouns, but if the drafters had thought to include "its" ("his/her/its/their"), the antecedent would have been more clear.

[6] By contrast, consider the broad wording of the releases in *Romska v Opper*, 234 Mich App 512, 514; 594 NW2d 853 (1999), and *Meridian Mut Ins Co v Mason-Dixon Lines, Inc (On Remand)*, 242 Mich App 645, 649-650; 620 NW2d 310 (2000).

walls whether or not I am presently aware of such consequences"). Because this document more narrowly identifies the persons and entities being released, however, only they can invoke this broad language. Again, the release plainly states that AAA of Michigan and certain parties connected to AAA were released. The present defendants were not among those covered by the expansively worded release of potential liability unless they can be fitted within the phrase "all persons or organizations responsible for [AAA's] acts."

For these reasons, we reverse the judgments of the district court, circuit court, and Court of Appeals, and remand this case to the district court for further proceedings that are consistent with this opinion. MCR 7.302(F)(1).

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.