*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0466p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

THE KELLOGG COMPANY,
　　　　　*Plaintiff-Appellee/Cross-Appellant,*

　　　　　*v.*

JATINDER P. SABHLOK,
　　　　　*Defendant-Appellant/Cross-Appellee.*

Nos. 05-2626/2627

>

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 04-00598—Robert Holmes Bell, Chief District Judge.

Argued: November 29, 2006

Decided and Filed:  December 22, 2006

Before:  MARTIN and GUY, Circuit Judges; CARR, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:**  Mary Ann Hart, SAFFORD & BAKER, Bloomfield Hills, Michigan, for Appellant.
Charles S. Mishkind, MILLER, CANFIELD, PADDOCK & STONE, Grand Rapids, Michigan, for
Appellee.  **ON BRIEF:**  Mary Ann Hart, Ralph R. Safford, SAFFORD & BAKER, Bloomfield
Hills, Michigan, for Appellant.  Charles S. Mishkind, MILLER, CANFIELD, PADDOCK &
STONE, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

　　　　RALPH B. GUY, JR., Circuit Judge.  Jatinder P. Sabhlok, defendant and counter-plaintiff,
appeals from the entry of a declaratory judgment in favor of his former employer, plaintiff and
counter-defendant The Kellogg Company.  The district court found, on cross-motions for summary
judgment, that the Separation Agreement and Release of Claims Form and the subsequent
Amendment thereto unambiguously released and barred the breach of contract and age
discrimination claims that Sabhlok threatened to bring against Kellogg.  Kellogg cross-appeals from
the district court's further finding that Sabhlok was not liable under the terms of the agreements for
attorney fees and costs that Kellogg incurred in this litigation.  After review of the record and the
arguments presented on appeal, we affirm the district court in all respects.

---

[*]The Honorable James G. Carr, Chief United States District Judge for the Northern District of Ohio, sitting by
designation.

# I.[1]

When Jatinder Sabhlok was hired by Kellogg in 1997, he had 22 years of experience with major food and beverage manufacturers and retailers (ten years in international markets). Over the next four years, Sabhlok received favorable performance reviews and was promoted three times by three different supervisors. Sabhlok was Vice-President of the International Research and Development Group and the business partner for the Asia/Australia territory when he learned in July 2001 that Kellogg planned to restructure his group at the end of September 2001. The group was disbanded, more than 20 employees were moved to other positions, and several positions—including Sabhlok's—were eliminated. Sabhlok turned 55 years old in September 2001.

Sometime between July and September 2001, Kellogg asked Sabhlok to extend his employment for a one-year period to assist in decentralizing research and development and establishing laboratories in Asia and Australia. According to Sabhlok, he was induced to stay by oral assurances from his supervisor, Donna Banks—made both before and after the reduction in force was finalized on September 30, 2001—that a permanent position would be found for him at Kellogg.

Kellogg offered the affected employees a "standard" or an "enhanced" severance package, but the latter required that the employee accept the terms of the "Separation Agreement and Release of Claims Form." Sabhlok executed the Separation Agreement on November 13, 2001, and continued to work through September 30, 2002.[2]

During the one-year retention period, Sabhlok spent nearly 70% of his working time traveling to Asia and Australia. Several permanent positions became available during that year, and Sabhlok asked to be considered for each of them. Despite repeated assurances that a permanent position would be found, Sabhlok was not selected for any of the openings. In fact, Sabhlok alleged that Kellogg selected a younger, less qualified employee over him in each case. On one occasion, Sabhlok was even told that he did not get the position because "as you can see we are bringing up the younger people."

After the retention period expired and Sabhlok's employment ended, Sabhlok and Kellogg executed the "Amendment of Separation Agreement and Release of Claims Form." Sabhlok contends that by this time, Kellogg had reconstituted the R&D Group, returned all but three employees from other positions, and selected a younger, less qualified employee to be its director. The Amendment, signed by Sabhlok on October 31, 2002, included an agreement that Sabhlok would abide by a broad noncompete clause and that Kellogg would provide Sabhlok with an additional six weeks of severance pay and a pro-rata bonus for the year 2002.

Beginning in early 2004, Sabhlok, through counsel, wrote to Kellogg threatening to sue. Kellogg chose to preempt the suit and filed this declaratory judgment action on September 8, 2004. Sabhlok filed an answer and a counterclaim seeking declaration that the Separation Agreement and Amendment did not release, waive, or discharge claims for breach of contract or age discrimination that arose *after* September 30, 2001. No discovery was conducted, and the parties filed cross-motions for summary judgment in reliance on the pleadings and written agreements. For the reasons set forth in its opinion of September 21, 2005, the district court granted Kellogg's and denied Sabhlok's motions for summary judgment; denied Kellogg's request for attorney fees and costs; and entered judgment in favor of Kellogg declaring that Sabhlok's proposed claims were barred by the

---

[1]The facts are drawn from the pleadings, to which the written agreements, correspondence, and proposed complaint were attached.

[2]Kellogg executed the Separation Agreement on November 15, 2001.

Separation Agreement and Amendment.  Judgment was entered accordingly, and these appeals followed.

## II.

Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Our review of the district court's decision in this case is *de novo. Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005); *see also McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004) (when denial of summary judgment is based on legal grounds, review is *de novo*).

There is no dispute that Michigan law governs the interpretation of the Settlement Agreement and Amendment.  The district court succinctly summarized the applicable law as follows:

> The scope of a release is controlled by the language of the release. *Adair v. State*, 470 Mich. 105, 127, 680 N.W.2d 386, 399 (2004) (citing *Batshon v. Mar-Que Gen. Contractors, Inc.*, 463 Mich. 646, 650, 624 N.W.2d 903 (2001)).  If the language of the release is unambiguous, it must be construed as written. *Id.*  "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." *Cole v. Ladbroke Racing Michigan, Inc.*, 241 Mich. App. 1, 13, 614 N.W.2d 169, 176 (2000) (citing *Rinke v. Automotive Moulding Co.*, 226 Mich. App. 432, 435, 573 N.W.2d 344 (1997)).  "The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity." *Id.* at 14 (citing *Gortney v. Norfolk & Western R. Co.*, 216 Mich. App. 535, 540, 549 N.W.2d 612 (1996)).  "When a release is challenged, the party seeking to avoid the release must prove by a preponderance of the evidence that the release should be set aside." *Binard v. Carrington*, 163 Mich. App. 599, 603, 414 N.W.2d 900, 902 (1987).

*Kellogg v. Sabhlok*, No. 5:04-CV-598, 2005 WL 2297446, at \*2 (W.D. Mich. Sept. 21, 2005) (unpublished decision).

### A.     Sabhlok's Claims

We begin with the language from Paragraph D of the Separation Agreement setting forth the broad release of claims:

> D.     (1)  . . . I irrevocably and unconditionally release, waive, and forever discharge [Kellogg] . . .  from any and all claims, demands and causes of action I have or may claim to have arising from or relating in any way to my employment or separation of employment.  This includes, but is not limited to, all claims under . . . the Michigan Elliott-Larsen Civil Rights Act, . . . ; and any and all of Employees claims arising out of or related to any contract, . . . or under any common law right of any kind whatsoever, . . . .

. . . .

> (3) Employee agrees and understands that execution of this Separation Agreement and Release of Claims Form by Employee operates as a complete bar and defense against any and all of Employee's Claims against Kellogg . . . .
>
> (4) I agree and acknowledge that the above-described consideration (additional severance pay and benefits) is in full and complete settlement of any and all claims, demands, and causes of action I have or may have.

The parties clarified in Paragraph H of the Separation Agreement that:

> H. This Separation Agreement and Release of Claims Form does not waive any claims that I may have that arise after the effective date of the Separation Agreement and Release of Claims Form.

Two other paragraphs of the Separation Agreement, Paragraphs N and S, are specifically relevant to the claims that Kellogg failed to "rehire" Sabhlok into a permanent position. They provide as follows:

> N. I understand that I may apply for employment as a new employee, but acknowledge that the Company is not obligated to offer employment to me now or in the future.
>
> . . . .
>
> S. I acknowledge and agree that this is the entire agreement and the only promises made to me to sign the Separation Agreement and Release of Claims Form are those contained within this document.

At the end of October 2002, after Sabhlok's last day of work, Sabhlok executed the "Amendment of Separation Agreement and Release of Claims Form." The Amendment did not include separate release language, but did contain the following merger and integration clause:

> 4. <u>Entire Agreement</u>: Employee agrees that this Amendment and original Separation Agreement dated November 15, 2001 constitute the entire agreement between Employee and Kellogg and that this Amendment and the original Separation Agreement supersede any and all prior and/or contemporaneous written and/or oral agreements relating to Employee's employment with the Company and termination therefrom. All other terms of the original Separation Agreement and Release of Claims Form remain unchanged and in full force and effect. Further, Employee acknowledges that this Amendment may not be modified except by written document, signed by Employee and an authorized officer of the Company.

As Sabhlok concedes on appeal, the district court did not err in finding that the Separation Agreement's release provisions plainly bar any claim for breach of contract or age discrimination that arose on or before the effective date of the Separation Agreement. Rather, Sabhlok contends that he may pursue claims based on the failure to "rehire" him during the retention period because such claims *arose after* the Separation Agreement's effective date (whether that was at the time of

the finalization of the separations on September 30, 2001, or when he signed it on November 13, 2001).**3**

Sabhlok argues specifically that although he expressed interest in several open positions between October 1, 2001, and September 30, 2002, Kellogg selected younger and less qualified individuals while continuing to promise that a permanent position would be found for him. It is this failure to "rehire" during the one-year retention period that Sabhlok asserts as the basis for his proposed claims for breach of an oral contract and age discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws Ann. § 37.2202. We address each claim in turn.

### 1.        Breach of Contract

The district court found that Sabhlok's proposed claims based on oral promises of future employment were barred by the Separation Agreement and Amendment. Aside from the releases, the Separation Agreement also explicitly provided in Paragraphs N and S that Kellogg was "not obligated to offer employment to [Sabhlok] now or in the future" and that the Separation Agreement constituted the parties' "entire agreement." Sabhlok argues on appeal that this reasoning ignores the parties' freedom to modify their agreement, as well as his claim that Kellogg made oral promises of future employment after the effective date of the Separation Agreement. On the contrary, the district court recognized that the parties had formally amended their agreement and that it precluded reliance on any such oral promises.

Specifically, Paragraph 4 of the Amendment expressly stated that the terms of the original Separation Agreement remained unchanged. It also provided the Separation Agreement and Amendment together not only constituted the entire agreement between the parties but also superceded any oral agreements "relating to [Sabhlok's] employment with the Company and termination therefrom." As the district court noted, "[a] merger clause such as this 'serves to integrate the agreement and makes the agreement a final written expression of the parties.' *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir. 1990)." *Kellogg*, 2005 WL 2297446, at *3. Accordingly, Sabhlok's breach of contract claims are barred by the Separation Agreement and Amendment.

### 2.        Age Discrimination

Sabhlok concedes, as he must, that claims based on the termination of his employment at the time of the Separation Agreement and at the conclusion of the one-year period were barred by the waiver and release provisions of the Separation Agreement. Focusing instead on the claims of discriminatory failure to "rehire," Sabhlok argues that neither the Separation Agreement nor the Amendment may effectively waive or release claims that arose after the effective date of the Separation Agreement.

Sabhlok urges us to find that the Michigan courts would follow federal law and hold that prospective waivers of civil rights claims are unenforceable. *See*, *e.g.*, *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 585 (6th Cir. 1995) (employee may not prospectively waive rights under ADEA or Title VII). We need not resolve this open question, however, because the district court found Sabhlok's failure-to-rehire claims did not arise after the effective date of the Separation Agreement and therefore did not implicate a prospective waiver of civil rights claims. Rather, the district court

---

**3**Sabhlok suggests at one point that the Separation Agreement was ambiguous concerning which date should be considered the "effective date." Because we find that the proposed failure-to-rehire claims are barred by the parties' agreements, it is not material whether the Separation Agreement was effective on September 30, 2001, or November 13, 2001.

concluded that the claims of discriminatory failure to "rehire" were barred by the Separation Agreement itself because the claims "did not arise independently after his termination but [were] instead inextricably linked to the claims of wrongful discharge that he expressly waived at the time of his termination." *Kellogg*, 2005 WL 2297446, at *5. The district court reasoned as follows:

Kellogg cites *Blakeney v. Lomas Info. Sys., Inc.*, 65 F.3d 482 (5th Cir. 1995). In *Blakeney* former employees who had signed a release when they were discharged during a reduction in force sued the company alleging that they were victims of age discrimination when the company failed to rehire them. The Fifth Circuit rejected their rehire argument.

According to the employees, because they cannot prospectively waive age discrimination claims, summary judgment was improper on the rehiring claim. This argument, however, is unpersuasive because the rehiring claim is not a future claim. In the release, the employees waived all rights to suit arising out of their termination. The employees' cause of action for failure to rehire is simply an attempt to revive claims they were paid to release. Any claim concerning failure to rehire certainly arises out of their termination and was extant when the release was ratified.

*Id*. at 485.

On the other hand, the Eleventh Circuit held that a release waiving an employee's right to sue on any then-existing claims did not waive his right to sue for the employer's "subsequent post-termination conduct." *Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1311 n.7 (11th Cir. 2001). In *Smith* the employee signed a general release when he resigned from his employment. He later reapplied for employment and was not rehired. Although he had signed a release, he was allowed to pursue a claim that the company's failure to rehire was in retaliation for his previous exercise of rights under the Family Medical Leave Act. *Id*.

This Court does not believe that *Blakeney* and *Smith* are necessarily contradictory. Neither case should be understood as articulating a broad rule as to whether a general release of claims will or will not bar a subsequent failure to rehire claim. Instead, the cases are best understood as being limited to their facts. *See Gustafson, Inc. v. Bunch*, 1999 WL 304560, *3 (N.D. Tex. 1999) ("*Blakeney* involved a reduction in force, and the facts do not indicate whether plaintiffs reapplied for the same or different positions. The court is confident, however, that *Blakeney* should not be read broadly and indiscriminately to make every subsequent employment application a 'rehire.'") [*aff'd without opinion*, 244 F.3d 134 (5th Cir. 2000)]. Under some facts a general release will bar a subsequent failure to rehire claim and under other facts it will not. It depends on how closely related the rehire is to the original termination in terms of time and subject matter. Where, as here, the employee gave up his right to sue for age discrimination in his termination and acknowledged that the employer had no obligation to rehire him, his claim of age discrimination in the failure to rehire arose out of his termination and cannot be the basis for a separate claim. After releasing an age discrimination claim, the employee cannot resurrect the age discrimination claim by reapplying for employment. *See Burnham v. Amoco Container Co.*, 755 F.2d 893, 894-95 (11th Cir. 1985) (*per curiam*) (holding that a failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself,

cannot resurrect the old discriminatory act because otherwise a potential plaintiff could always circumvent the limitations by reapplying for employment).

*Id.* at *4.

Sabhlok argues that this interpretation ignores the agreement in Paragraph H that the Separation Agreement did not waive any claims that might arise after the effective date of the Separation Agreement. Sabhlok relies on *Blakeney*, pointing out that there the court found the released failure-to-rehire claim "was extant when the release was ratified." 65 F.3d at 485. In fact, in this case, the essence of the district court's decision was its finding that the failure to "rehire" claims were not new claims that arose after the effective date of the Separation Agreement.

We agree with the district court that the issue turns on whether the failure to "rehire" Sabhlok during the retention period provided him with a new and discrete claim of discrimination or was merely an attempt to resurrect age discrimination claims for which he was paid to release. Most tellingly, Sabhlok's proposed complaint alleged that his "age was at least one factor that made a difference in Kellogg's decision to terminate [him] from his position of Vice President of the International Research and Development Group, and not transfer [him] to any of the other positions given to younger, less experienced and lower paid Kellogg employees." Also, it was alleged with respect to two of those positions that the younger employee was given virtually all of his duties and responsibilities "and essentially replaced [him]." Here, the failure to "rehire" Sahblok into a permanent position during the period between the notice of his termination and his last day of work did not arise separately from the decision to terminate his employment rather than offering him a different permanent position.

Finally, the district court added that this conclusion was also supported by the Amendment's stipulation in Paragraph 4 that: "All other terms of the original Separation Agreement and Release of Claims Form remain unchanged and in full force and effect." In particular, this language reaffirmed that Kellogg was not obligated to offer Sabhlok employment "now or in the future." Also, emphasizing that contracts must be construed consistent with common sense and in a manner that avoids absurd results, *see Parrish v. Paul Revere Life Ins. Co.*, 302 N.W.2d 332, 333 (Mich. App. 1981), the district court observed that "common sense dictates that Kellogg would not have offered additional benefits to Sabhlok at the conclusion of the retention period if it was not satisfied that Sabhlok had waived his right to sue Kellogg for age discrimination claims arising out of Kellogg's failure to rehire Sabhlok during the retention period." *Kellogg*, 2005 WL 2297446, at *5.

Sabhlok maintains that the Amendment's affirmation of the terms in the Separation Agreement could not constitute a knowing expansion of its releases to encompass claims arising during the one-year period. *See Wyrembelski v. City of St. Clair Shores*, 553 N.W.2d 651 (Mich. App. 1996) (release is valid if fairly and knowingly made). Also, pointing to the "common sense" comment, Sabhlok accuses the district court of improperly rewriting the parties' agreement under the guise of interpretation. *See Upjohn Co. v. N.H. Ins. Co.*, 476 N.W.2d 392 (Mich. 1991). However, the district court did not find that the Amendment served to expand the releases to encompass new claims, but concluded that the failure-to-rehire discrimination claims fell within the scope of the claims released in the Separation Agreement.

The district court did not err in finding that the proposed age discrimination claims were barred by the waiver and release of claims in the Separation Agreement, and Kellogg was entitled to declaratory judgment to that effect.

## B.     Kellogg's Claim for Attorney Fees and Costs

Under the American Rule, followed in Michigan, attorney fees are generally not recoverable by the prevailing party. *Haliw v. City of Sterling Heights*, 691 N.W.2d 753 (Mich. 2005). Kellogg

sought an award of fees and costs incurred in this litigation in reliance on Paragraphs D(2) and (7) of the Separation Agreement. Paragraph D(2) provided in pertinent part that, "[t]o the fullest extent permitted by law," Sabhlok agreed he "shall not lodge, assist nor participate in any formal or informal charge or complaint in any court, [or] with any . . . agency or any other forum, . . . arising out of or related to Employee's Claims or Employee's employment . . . or the termination of that employment[.]" Also, Paragraph D(7) provided:

> (7) I have not filed any charges, claims, or lawsuits against the Company involving any aspect of my employment which have not been terminated as of the date of this Separation Agreement and Release of Claims Form. If I have filed any charges, claims or lawsuits against the Company, I agree to seek immediate dismissal with prejudice . . . . If I breach any portion of this Separation Agreement and Release of Claims Form, I acknowledge that I will to the fullest extent permitted by law, be liable for all expenses, including costs and reasonable attorney's fees incurred by [Kellogg] in defending the lawsuit or claim, regardless of the outcome.

Kellogg asserts in its cross-appeal that it was entitled to recover attorney fees and costs under Paragraph D(7) both because Sahblok sent letters that threatened suit and because Sabhlok filed a counterclaim in this action.[4]

First, although Kellogg argues that the term "claim" encompasses any demand for money, Paragraph D(7) prohibits the "filing" of any claim, charge, or action in any court, agency, or other forum. Correspondence from counsel, demanding or not, does not constitute such a "filing," and cannot be the basis for an award under Paragraph D(7). Second, Kellogg argues that the filing of the counterclaim constituted "participation" in a complaint arising out of his employment or the termination thereof in breach of Paragraph D(2). However, the plain meaning of these provisions is to prevent Sabhlok from filing or joining in any charges, claims, or complaints against Kellogg and they do not plainly or unambiguously preclude the employee from filing pleadings in defense of an action instituted against him by Kellogg. We agree with the district court that: "Because Sabhlok did not file his proposed complaint in any court or agency and because this action for declaratory relief was initiated by Kellogg rather than by Sabhlok, this Court does not find any breach of the agreement that would give rise to attorney fees under ¶ D(7)." *Kellogg*, 2005 WL 2297446, at *5.

**AFFIRMED.**

---

[4]This court recently indicated that a waiver in a separation agreement of the right to file a charge with the EEOC or participate in EEOC proceedings may not be enforceable. *EEOC v. SunDance Rehab. Corp.*, 466 F.3d 490, 501 (6th Cir. 2006).