**In re Peter Vincent ST. JOHN, Debtor.**

**Marlene K. Cox, Plaintiff.**

v.

**Peter Vincent St. John, Defendant.**

**Bankruptcy No. 09–07761.**
**Adversary No. 09–80453.**

United States Bankruptcy Court,
W.D. Michigan.

May 12, 2010.

---

Marlene K. Cox, Allendale, MI, pro se.

Ronald J. Vander Veen, Cunningham Dalman, P.C., Holland, MI, for Defendant.

## MEMORANDUM ON MOTION FOR SUMMARY JUDGMENT

DAVID T. STOSBERG, Bankruptcy Judge.

This case comes before the Court on the Defendant's Motion for Summary Judgment. The Plaintiff filed a response in opposition to the Defendant's motion. For the reasons set forth below, the Motion for Summary Judgment is granted.

## FACTS

The Defendant filed a voluntary Chapter 7 bankruptcy petition on June 30, 2009. The Defendant did not list the Plaintiff as a creditor in his sworn bankruptcy sched-ules. On October 2, 2009, the Plaintiff filed this adversary proceeding seeking to except debts from discharge under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6).

In 2003, the Plaintiff was referred to an entity called B & P Group, Inc. ("B & P") by a friend for investment purposes. The Defendant was the vice president of B & P, and Mr. Chuck Bailey was the president of that entity. According to the Plaintiff's deposition, she met with the Defendant, but after he was called away, the Plaintiff spoke with Mr. Bailey about investing in B & P. Based in some part on these discussions, the Plaintiff agreed to invest in B & P. The Plaintiff loaned $30,000.00 to B & P and received a promissory note signed by the Defendant in his capacity as vice president of B & P. Between March 2003 and March 2004, B & P transferred its assets to Progressive Financial Group, Inc. ("PFGI"). In March 2004, the Plaintiff renewed the Note, which the Defendant signed on behalf of PFGI as vice president. In March 2005, the Plaintiff again renewed the note, the only difference being that this time Mr. Bailey signed the note on behalf of PFGI. For several years, both B & P and later PFGI, made monthly interest payments to the Plaintiff in accordance with the terms of the notes. In May of 2006, PFGI ceased doing business. To maximize PFGI's assets, the officers and directors of PFGI and its note holders, including the Plaintiff, agreed to transfer PFGI's assets to a liquidating entity, and PFGI's creditors formed a liquidating entity called PFG Liquidating LLC ("PFG Liquidating"). In partial consideration for transferring PFGI's assets to the liquidating entity, the officers and directors of PFGI, including the Defendant, obtained a release from PFGI's note holders, including the Plaintiff. On April 5, 2007, the note holders executed a Note Holders Agreement which provided in part:

We, the Creditor's Committee, have reached a tentative agreement with Pete St. John, the current owner of [PFGI], to release the assets of PFGI to a note holder owned entity. This entity ... will have the stated goal of maximizing the balance of assets for the note holders. By signing this document, you are agreeing to the creation of, and share in the ownership of this entity.... By affixing our signatures we are agreeing also to hold the owners, officers and assigns of PFGI, Inc. harmless from liability.

The Plaintiff executed this Agreement along with the other members of the creditors' committee, and the Defendant transferred PFGI's assets to PFG Liquidating. A little more than two years later, on June 30, 2009, the Defendant filed for Chapter 7 bankruptcy.

### CONCLUSIONS OF LAW

The Defendant has now moved for summary judgment asserting that the debt owed to the Plaintiff constituted a corporate debt owed by PFGI, not a personal debt owed by the Defendant. The Defendant further states that any claim asserted by the Plaintiff against the Defendant is barred by the April 2007 Note Holder Agreement which included a release for all owners and officers of PFGI. Finally, the Defendant also asserts that the Plaintiff has failed to allege facts supporting her claims of fraudulent representations and breach of fiduciary duty.

The Court can render summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.Proc.Rule 56(c). Summary judgment is appropriate when the record taken as a whole, and viewed in the light most favorable to the nonmoving party, could not lead a rational trier of fact to find for the nonmoving party. *Matsu-*

*shita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) *(citing First Nat'l Bank v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The party seeking summary judgment bears the burden initially of showing that there is no genuine issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may rely on the pleadings, depositions, answers to interrogatories, and admissions on file. *Id.* When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, summary judgment should be granted. *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) *(quoting Celotex,* 477 U.S. at 322, 106 S.Ct. 2548).

Once the moving party has made a proper motion for summary judgment, the nonmoving party may not rely upon mere allegations to rebut the motion, but instead must set forth specific facts demonstrating that a genuine issue of material fact exists for trial. Fed. R. Civ.Proc.Rule 56(e). The nonmoving party must produce more than a "mere scintilla" of evidence to support its claim, once a properly supported motion for summary judgment has been made. "Rule 56(e) places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision." *Jones v. Asgrow Seed Co.,* 749 F.Supp. 832, 834 (N.D.Ohio 1990).

### A. Underlying Debt

■ The Plaintiff has alleged that the debt owed to her should be excepted from

discharge under §§ 523(a)(2), (a)(4) & (6). This allegation, however, begs the question whether there is actually a debt to except from discharge. The original note and the subsequent renewal notes identify the Plaintiff and the two corporate entities, B & P and PFGI, as the parties to the notes. While the Plaintiff alleges significant involvement by the Defendant in the two corporations, those allegations, even if construed most favorably for the Plaintiff, fail to establish independent liability on the part of the Defendant. The Plaintiff's notes were solely with the corporations, and there is no evidence of any contract between the Plaintiff and the Defendant. The Plaintiff, having no privity of contract with the Defendant, cannot assert a claim against Defendant for the money owed on the notes. Nor, in the Court's view, is there sufficient evidence to create a triable issue that the Defendant is liable to the Plaintiff.

Although not raised by the Plaintiff in her pleading, the Court will extend its analysis to consider whether the Defendant may be liable to the Plaintiff under a piercing the corporate veil theory. To pierce the corporate veil, the Plaintiff must establish a proper basis for disregarding the corporate formality. Although the general rule in Michigan is that a corporation is a separate legal entity from its directors and shareholders, in extraordinary circumstances the separate identities of the corporation and those behind it may be disregarded, with the result that the individuals will be liable for the corporation's debts. Of course, there is very high standard for this type of action. By piercing the veil, a court effectively casts aside the cloak of corporate limited liability. *Bitar v. Wakim*, 456 Mich. 428, 572 N.W.2d 191, 192 (Mich.1998) (corporate structure may be disregarded when the equities are compelling and honoring the corporate structure would subvert justice or perpetuate fraud). "A court's treatment of a corporate entity clearly rests on notions of equity, whether it is an action at law or at equity." *Kline v. Kline*, 104 Mich.App. 700, 305 N.W.2d 297 (1981). Using equity, courts have the power "to look through and behind the legal entity of corporate existence." *Gledhill v. Fisher & Co.*, 272 Mich. 353, 262 N.W. 371 (1935). Piercing the corporate veil is appropriate when there is evidence of fraud, illegality, or injustice. *Allstate Ins. Co. v. Citizens Ins. Co. of America*, 118 Mich.App. 594, 325 N.W.2d 505 (1982). "Each case involving disregard of the corporate entity rests on its own special facts." *Kline, supra* at 297.

The issue would be whether the Plaintiff's evidence demonstrates that the Defendant's conduct justifies piercing the corporate veil. The answer is no. The Plaintiff failed to plead any facts that would compel the Court to use equity to pierce the corporate veil. The meager evidence provided by the Plaintiff indicates the Defendant's limited personal involvement may have been a factor in her decision to invest with B & P. Moreover, while the Plaintiff met with the Defendant when initially investing, the Defendant was called away and Mr. Bailey concluded the discussions with the Plaintiff. Mere employment by a corporation, even in a supervisory capacity, or mere participation with a corporation in seeking investors, is insufficient to render an individual liable for the corporation's debt. The record before the Court is totally devoid of any evidence showing that the Defendant used the corporations to evade a personal obligation, to perpetrate a fraud, to commit an injustice, or to gain an unfair advantage. As such, there is no basis for piercing the corporate veil.

**B.   Release**

The Court could stop its analysis at this point, considering that, due to

the corporate structure and the lack of privity between the Plaintiff and the Defendant, there is no underlying debt owed by the Defendant to the Plaintiff. Nevertheless, the Court feels compelled to address the release signed by the Plaintiff. There is no question that the Plaintiff signed a release holding the owners, officers, and assigns of PFGI harmless from liability. Likewise, there can be no question that the Defendant, as an owner/officer of PFGI, falls within that group. The validity of a release turns on the intent of the parties. *Batshon v. Mar–Que General Contractors, Inc.*, 463 Mich. 646, 624 N.W.2d 903 (Mich.2001). If the language of a release is clear and unambiguous, the intent of the parties is ascertained from the plain language used by the parties. *Wyrembelski v. St. Clair Shores*, 218 Mich.App. 125, 553 N.W.2d 651 (1996). In this case, there is no question that the members of the creditor's committee, including the Plaintiff, intended to release the owners and officers of PFGI in order to create the liquidating entity, PFG Liquidating. Furthermore, under Michigan law, any consideration, however slight, is legally sufficient to support a promise. *Sambo's Restaurants, Inc. v. City of Ann Arbor*, 473 F.Supp. 41 (E.D.Mich.1979). In this case, the Defendant's agreement to transfer PFGI's assets to PFG Liquidating constitutes more than sufficient consideration to support the release. The Plaintiff presented no evidence to contradict these conclusions.

### CONCLUSION

The Plaintiff lost her investment with B & P, and later PFGI, and she now seeks to hold the Defendant personally liable for B & P and PFGI's defaults. Nothing in the record, however, supports either a finding that the Defendant is personally liable on the notes or liable for any sort of fraudulent conduct. Additionally, the Plaintiff executed a release holding the Defendant harmless from liability, and the Court can see no reason to invalidate the release.

The Court shall enter an Order this same date in accordance with the holding of this Memorandum.