**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0645n.06

**No. 12-2327**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| INTERNATIONAL UNION, UAW, | ) | |
| | ) | **FILED** |
| and | ) | ***Jul 10, 2013*** |
| | ) | DEBORAH S. HUNT, Clerk |
| UAW LOCAL 1869, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiffs-Appellants*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| GENERAL MOTORS LLC, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee*. | ) | |

BEFORE:    COLE and DONALD, Circuit Judges, MARBLEY, District Judge[*]

COLE, Circuit Judge.  This appeal is brought by Plaintiffs-Appellants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and UAW Local 1869 (collectively "UAW"), on behalf of five union workers who were terminated from General Motors ("GM") in 2009 as part of a reduction in force ("RIF") in the Design Center Surface Product Engineering Department ("SPE") of GM.  The UAW alleges that these terminations violated the terms of a collective bargaining agreement protecting union workers, which required GM to layoff workers in reverse order of seniority, assuming those workers were "capable of doing the work."

---

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

The UAW further contends that, under the agreement, even if the workers were properly dismissed during the RIF, once GM began hiring again, the company was required to recall the laid-off workers before hiring new employees. The district court granted summary judgment for GM and dismissed the complaint. Because we find that there are genuine disputes of material fact, we reverse and remand in part and affirm in part.

I.

On September 14, 2009, GM laid off six union-represented employees as part of a RIF. Five of those employees, Gerald Bosman, Linda Chapman, Ovidu Kowalski, Darron Powell and Christopher Schlaf, are represented by the UAW as parties to this litigation.

The UAW relies on the language of a local collective bargaining agreement, known as "the Local Agreement," for this suit. The Local Agreement provides a localized supplement to a national collective bargaining agreement between GM and the UAW, is specific to the SPE, and was made between Local 1869 and the GM Design Center. The Agreement requires that employees be laid off in reverse order of seniority, provided that they are "capable of doing the work." Furthermore, once an employee has been laid off, he is entitled to be recalled in reverse order of layoff, provided he is capable of doing the work.

According to GM, as a result of its restructuring, the type of work performed in the SPE changed prior to the layoffs. This restructuring allegedly resulted in a lack of any novice-level work. Due to this change in work structure, as well as financial difficulties, the company conducted a RIF that laid off all employees GM determined were not capable of performing more advanced tasks.

The parties disagree as to how exactly GM classifies employees as "novices" as well as how it is determined that they are or are not qualified to perform more advanced tasks.

Bosman, Champman, Kowalski, Powell and Schalf were all employees at GM with a significant level of seniority. They were dismissed in the post-restructuring RIF. This suit alleges that these layoffs were a violation of the Local Agreement because, according to the UAW, (1) the work in the SPE did not change in any significant way after restructuring, and (2) even if it did, the laid-off employees were capable of performing the more advanced work.

After the RIF, GM began hiring again but did not recall the laid-off workers. According to GM, the employees were still not "capable of doing the work" and were therefore not eligible for recall. The UAW claims that GM's failure to recall these five workers is another violation of the Local Agreement.

Powell and Schlaf, two of the laid-off employees, signed severance agreements upon leaving GM. The agreements waive their right to bring claims "relating to [their] employment and/or separations" from GM. Powell and Schlaf therefore do not challenge the fact that they were laid off. They do, however, allege that GM violated their right under the Local Agreement to be recalled. GM contends that the severance agreements prevent Powell and Schlaf from bringing these claims.

The district court granted GM's motion for summary judgment, holding that the UAW had failed to produce any evidence to demonstrate that the laid-off employees were capable of performing the work. It therefore held that there was no genuine dispute as to any material fact whether GM had violated the Local Agreement by dismissing the employees from their positions. The court did not address the UAW's argument regarding the employees' right to recall. The court

did hold, however, that because Powell and Schlaf had signed severance agreements, they had waived their right to sue, even with regard to the recall.

We find that the UAW has produced sufficient evidence to create a genuine issue of material fact as to whether GM violated the Local Agreement. We agree with the district court, however, that Powell and Schlaf have waived their rights to sue regarding the recall. Therefore, we reverse and remand in part and affirm in part.

## II.

The UAW's first claim is that the employees were capable of performing the work post-restructuring, as defined by the Local Agreement, and therefore GM violated that Agreement by failing to dismiss the employees in order of seniority. We review an order granting summary judgment de novo. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) On summary judgment, we view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Tysinger*, 463 F.3d at 572. A genuine dispute is one "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Id*.

The UAW relies on the text of the Local Agreement in order to support its argument here. According to the Local Agreement, employees are entitled to be laid-off in order of seniority so long as they are "capable of doing the work." Under the Local Agreement:

> (9) [I]f it becomes necessary to . . . layoff employees from the occupation group, they will be laid off in the reverse order of [seniority] provided those employees retained are capable of doing the work.

> (10)  Employees laid off in accordance with Paragraph (9) will be recalled in the reverse order of layoff provided they are capable of doing the work.
> (11)  The term 'capable of doing' as included in Paragraph (9) and (10) means more than capable of learning.  It means capable of demonstrating good competent performance, which, when necessary, would include some training, but without such prolonged or detailed training as to burden the Corporation or cause undue loss of efficiency.

The UAW contends, that although the employees that were laid-off may not have been the *most* capable employees, they were still capable and they had seniority.  Therefore GM violated the Local Agreement when it laid them off.

Federal labor law applies to the enforcement and interpretation of collective bargaining agreements under § 301(a) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185(a). *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957).  When interpreting and enforcing a collective bargaining agreement, traditional rules of contract interpretation apply so long as they are consistent with federal labor policies.  *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1293 (1991).  "When disputes arise, courts should first look to the explicit language of the agreement to determine, if possible, the clear intent of the parties."  *Id*.  The question, therefore, is whether, based on the evidence of record, a reasonable jury could find that Bosman, Chapman and Kowalski were "capable of doing the work" as defined by the Local Agreement at the time they were laid off.

Under the Local Agreement, SPE employees are categorized into three Overtime Subgroups: Subgroup A, Subgroup B and Subgroup C.  Bosman, Chapman and Kowalski were in Subgroup C. According to GM, as alleged in an affidavit from the Senior Director of the SPE, Deborah Lystad, these groups were designed to categorize employees between "novice," "proficient," and "expert" workers.  Subgroup C was the novice-level Subgroup.  According to Lystad, employees were placed

- 5 -

into these groups based on a performance evaluation system developed in 2005. Lystad claimed that when GM restructured the company, it eliminated almost all of the novice-level—or Subgroup C—work, incorporating that work into the work performed by those in the higher-skilled subgroups. She asserted that the employees at issue had the opportunity to file a grievance and challenge their placement into Subgroup C but never did. GM claims that it could not layoff workers "based solely on seniority and still maintain a group of employees capable of performing the work that needed to be done because of the number of proficient and expert level employees who would [have been] affected."

The district court relied on this argument, and Lystad's affidavit and deposition testimony to grant summary judgment in GM's favor. It did not consider, however, evidence submitted by the UAW, holding instead that "[p]laintiffs have provided no evidence of what work is now done by the subgroups in SPE in order to survive GM's summary judgment motion." We disagree with this statement—the UAW has in fact provided evidence to support its claim.

The UAW first argues that the work at GM has not changed and Bosman, Chapman and Kowalski competently performed their work before they were laid off. GM agrees that they were competent novice-level workers. Therefore, the question is whether the work has changed. In order to support its claim that the work has not changed, the UAW submits, among other things, an affidavit from a long-time employee of SPE, Steven Champion, averring that the work previously performed by the terminated employees is still regularly performed at SPE. Champion states that the only new work at SPE is a new computer program called Alias. According to Champion, however, no one is familiar with this brand-new program and therefore all employees must receive

Alias-training. Furthermore, the UAW cites employee evaluations to demonstrate that the laid-off employees maintained a good record of performance while employed with GM and, therefore, there is no reason to question their continued ability to perform this work.

The district court did not consider Champion's testimony. GM contends that this was proper because "Champion is one of more than 100 employees in SPE[,] . . . does not hold a supervisory role" and he "offers nothing to suggest that any SPE employee is continuing to perform a job consisting entirely or predominantly of novice-level work as the putative plaintiffs did." We disagree. It is not our place to weigh Champion's credibility at this stage, and Champion repeatedly states in various ways that "[t]he work the terminated employees did . . . is identical to what is being done currently." We only decide that a reasonable jury could determine that Champion is a reliable and material witness. *See Tysinger*, 463 F.3d at 572.

Furthermore, the UAW has submitted evidence that, since the layoffs, GM has rehired novice workers into SPE who have not received additional training. This evidence includes these workers' previous novice-level evaluations from GM and Champion's testimony on the issue. This evidence refutes GM's argument that there is no longer any novice-level work in SPE and is additional evidence that the work in SPE has not substantially changed. GM responds with evidence that at least one of these workers was not a novice at the time he left SPE and claims that the evidence submitted by the UAW is simply incorrect. As for the other worker hired, GM gives little response other than that, as of the time he was hired, he was capable of performing the work. This creates a genuine issue of material fact whether the work at GM has substantially changed and who is "capable of" performing that work.

Finally, the UAW argues that, even if the work at GM did change, Bosman, Chapman and Kowalski were capable of doing the work. Citing the Local Agreement, the UAW contends that the primary purpose of the subgroups was a means to equalize overtime, not rank workers' skill. Instead, it argues that GM had other ways to evaluate and rank employees. According to GM's internal evaluation system, the laid-off employees were not novices but in fact were classified as "proficient" or "expert." According to the UAW, and the documents it has submitted, GM ranked and paid designers by "Levels." Level 4, for example, is considered an "Employee in Training" and must "[c]omplete 'Novice' Skill Set requirements." Bosman and Chapman were Level 7 Senior Designers in SPE and Kowalski was a Level 6 Designer. According to the GM documents submitted by the UAW, in order to be classified as Level 6, or a Designer, an employee must "[c]omplete 'Proficient' Skill Set requirements." Similarly, Level 7 Senior Designers must "[c]omplete 'Expert' Skill Set requirements." Lystad furthermore testified in her deposition that employees are placed in levels based on their ability to perform the work.

GM responds that the documents relied on by the UAW are outdated and "general in nature," and that "management has the prerogative to determine which employees are at all capable of performing the work that the company has available." The UAW's argument, however, is not that it, as opposed to management, should decide which employees are competent to perform their jobs; its argument is that internal GM documents demonstrate that GM management has already determined that these employees are capable of performing proficient or expert work. Furthermore, the age of the documents does not make them irrelevant for purposes of summary judgment. It

would not be unreasonable for a jury to rely on these skill levels simply because they are a few years old. Therefore, UAW has submitted sufficient evidence to create a genuine dispute of material fact.

II.

Next the UAW contends that, even if the employees were properly laid-off, GM violated the Local Agreement by failing to recall them when they began rehiring. The district court granted GM's motion for summary judgment without discussing this argument.

The Local Agreement provides that employees "will be recalled in reverse order of layoff provided they are capable of doing the work." The UAW argues that, because SPE began hiring again after the layoffs, under this language the employees who were laid-off had a right to be recalled. GM responds that the employees did not have a right to be recalled because they were not capable of performing the work.

We conclude that there is a genuine dispute of material fact as to whether the employees had a right to be recalled. As we have noted, the UAW has advanced evidence, through GM documents and Champion's affidavit, that novice-level workers were hired by GM after the layoffs. A reasonable jury could find that, even if the employees were properly laid off initially, the hiring of new novice workers is evidence that SPE has new novice-level work that the laid-off employees would be capable of performing.

III.

Finally, two of the laid-off employees, Powell and Schlaf, signed severance agreements at the time they were laid off, collecting significant sums of money in return. The UAW acknowledges that these agreements prevent them from challenging Powell's and Schlaf's initial dismissal from

GM. However, it argues that Powell and Schlaf retain the right to challenge GM's failure to recall them to their positions. GM responds, and the district court held, that the recall is tied to their employment and the language of the severance agreement therefore forecloses any claim regarding recall.

When a contract is clear and unambiguous "a court should not use extrinsic evidence to attempt to discern the intent of the parties, but rather should determine their intent from the plain language of the contract." *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008). In reading the contract we give the language its "ordinary and natural meaning." *Id*.

Each severance agreement bars all "claims, grievances, lawsuits, demands and causes of action, whether known or unknown . . . in any way relating to [the] employment and/or separations from General Motors Corporation . . . ." It furthermore states: "I understand that GM does not intend for me to be eligible at any time in the future for reemployment by GM . . . ." General Motors argues that the language "in any way relating to" bars all claims that are tied to Powell and Schlaf's dismissal from the company. Because the recall is tied to their dismissal it should be barred.

The UAW responds that an agreement, such as this one, does not apply to claims arising post-termination. The UAW relies on *Kellogg Co. v. Sabholk*, 471 F.3d 629, 635 (6th Cir. 2006) to support its case. *Kellogg*, however, does not provide strong support for the UAW's claim. In *Kellogg* we said: "Under some facts a general release will bar a subsequent failure to rehire claim and under other facts it will not. It depends on how closely related the rehire is to the original

termination. . . . " *Id*. at 635 (citation and internal quotation marks omitted). We then went on to hold that the plaintiff had waived his right to sue for failure to rehire. *Id*. at 636.

We find that GM's interpretation is the most plain and ordinary reading of the contract language. Powell and Schalf were aware of their recall rights at the time each signed the severance agreement. They knew at the time they signed that they were giving up a right to future employment at GM. Under any reasonable interpretation of the contractual language, this would include their right to recall. Therefore, Powell and Schalf have waived their right to sue.

IV.

For the foregoing reasons, we reverse and remand with respect to Bosman's, Chapman's, and Kowalski's claims, and affirm with respect to Powell's and Schalf's claims.