NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0092n.06

No. 25-1688

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 20, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| VELLA CRAWFORD, | ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| MAGNA SEATING OF AMERICA, INC., | ) ) | |
| Defendant-Appellee. | ) ) | OPINION |

Before: GRIFFIN, BUSH, and NALBANDIAN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Vella Crawford worked for defendant Magna Seating of America, Inc. for several years. After a year and a half of medical leave, Magna Seating instructed Crawford to return to work. The company fired her sometime after. Crawford sued. But she had previously sued Magna Seating in a now-settled workers' compensation action. Following that settlement, Crawford executed a general release barring all claims related to her employment with Magna Seating. The district court held that the general release precludes her instant discrimination action. We agree.

I.

Magna Seating employed Crawford at one of its manufacturing plants. Due to a disability, the company placed her on medical leave. After a year and a half, Magna Seating asked her to return to work, and Crawford requested an accommodation to help her do so. Magna Seating denied this request, however, and fired her a week later.

Crawford sued, alleging violations of the Americans with Disabilities Act (the ADA) and the Michigan Persons with Disabilities Civil Rights Act (the PWDCRA) (the instant case, which we refer to as the discrimination action). Unbeknownst to her counsel in the discrimination action, Crawford had also filed a workers' compensation claim against Magna Seating (the workers' compensation action). Different counsel represented the parties in the workers' compensation action.

Crawford settled her workers' compensation action against Magna Seating. At the same time she was presented the workers' compensation settlement agreement, Magna Seating presented to her another document, titled a "General Release of Claims and Settlement Agreement" (the General Release). This document "release[d] and forever discharge[d] [Magna Seating] . . . from any and all claims . . . which [Crawford] ever had, now have or may subsequently have regarding any cause, matter or thing existing up to the present time in any way relating to [her] employment . . . or [its] termination," including claims made "pursuant to the Americans with Disabilities Act" and "any other state . . . law." The General Release indicated that a check was forthcoming "[i]n complete settlement of Crawford's claims." And Crawford "acknowledge[d] . . . that she . . . entered into th[e] [a]greement voluntarily after receiving advice that she" could "retain counsel to explain all of its terms and conditions to her complete satisfaction," and that she "read the entire [a]greement and underst[ood] any and all terms included . . . ." The General Release also gave Crawford 21 days to review it before signing and another 7 days to revoke it after signing.

Crawford conferred with counsel in the workers' compensation action. Then she signed the General Release. She received a check for doing so but did not cash it. She did not inform counsel in her discrimination action about the General Release. But Magna Seating's counsel in

the discrimination action learned of the General Release, informed Crawford's counsel, and then requested that Crawford dismiss the action.

Crawford refused and Magna Seating moved for summary judgment. At the same time, Crawford moved to bar enforcement of the General Release. In support, she submitted an affidavit stating that she thought the General Release applied to only her workers' compensation claim, that she never intended to dismiss the discrimination action, and that her counsel in the workers' compensation action did not explain that the General Release would impact the discrimination action.

The district court denied Crawford's motion to bar enforcement of the General Release and granted summary judgment in favor of Magna Seating after finding Crawford knowingly and voluntarily released her claims. Crawford appealed.

II.

We review the district court's grant of summary judgment de novo. *Snyder v. Finley & Co., L.P.A.*, 37 F.4th 384, 387 (6th Cir. 2022). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The sole issue before us is whether the General Release is enforceable. A release is enforceable if it is executed knowingly and voluntarily. *Nicklin v. Henderson*, 352 F.3d 1077, 1080 (6th Cir. 2003). We consider five factors: (1) the plaintiff's "experience, background, and education;" (2) the time provided to consider the release and the opportunity to consult counsel; (3) "the clarity of the release; (4) the consideration for the release; and (5) the totality of the circumstances." *Id.* (citing *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)). Crawford must show by a preponderance of the evidence that the General Release should be set

aside. *See Kellogg Co. v. Sabhlok*, 471 F.3d 629, 632 (6th Cir. 2006) (citing *Binard v. Carrington*, 414 N.W.2d 900, 902 (Mich. Ct. App. 1987)). She has not done so.[1]

First, Crawford is a middle-aged woman with some college education, multiple professional certificates, and over 20 years of experience working in manufacturing facilities. From this, we know that Crawford can understand contractual obligations. *See, e.g.*, *Gascho v. Scheurer Hosp.*, 400 F. App'x 978, 981 (6th Cir. 2010) (explaining that some post-high school education indicates an individual can understand a settlement agreement). In fact, she even "acknowledge[d] that she . . . fully reviewed all of the terms and conditions of" the General Release and confirmed she understood the terms.

Second, Crawford had 21 days to consider the agreement and an additional 7-day revocation period. *See id.* at 982 (explaining that a 21-day consideration period and a 7-day revocation period gave "ample opportunity to consider the agreement"); *Adams*, 67 F.3d at 582–83 (recognizing that a 5-day consideration period, along with advice to consult counsel was acceptable). And Crawford consulted her workers' compensation attorney before signing the agreement. *See Gascho*, 400 F. App'x at 982 (noting that having the opportunity to seek legal advice is what is important, not that the advice came from a subject-matter specialist). Thus, Crawford had substantial time to consider the General Release and consulted a lawyer before signing it, which are strong indicators of the release's enforceability.

---

[1]We note that she has likely forfeited any challenge to whether the first three *Nicklin* factors weigh in her favor because she either did not make the arguments below or does not develop the arguments on appeal. *See, e.g.*, *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015) ("As a general rule in this Circuit, arguments raised for the first time on appeal are forfeited."); *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014) (explaining that perfunctory and undeveloped arguments are waived on appeal). For the sake of clarity, we will consider all five.

Third, the language of the General Release plainly encompassed Crawford's discrimination claims. The document "release[d] and forever discharge[d] [Magna Seating]" from "any and all claims" Crawford "ever had, now ha[s]" or may have that arose from her employment or termination, including those "pursuant to the Americans with Disabilities Act . . . or any other state . . . law." The General Release could not have been clearer; after Crawford "acknowledge[d] that she . . . fully reviewed all of the terms and conditions of" the General Release and confirmed she understood the terms, she relinquished her right to pursue any claim related to her employment or its termination, including this discrimination action. We have previously held similar releases to be enforceable. *See, e.g.*, *Kellogg*, 471 F.3d at 632–34 (enforcing a similar release).

Crawford's assertion that the release covered only her workers' compensation claims contradicts "the plain[,] . . . unambiguous, and easily understandable" agreement she signed, and any subjective misunderstanding cannot override the contractual language. *Adams*, 67 F.3d at 583; *see also Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992) ("A meeting of the minds is judged by . . . the express words of the parties and their visible acts, not their subjective states of mind." (citation modified)).

Fourth, Crawford received consideration specifically for the General Release, which was distinct from her workers' compensation settlement.

Finally, the totality of the circumstances weighs in favor of enforcement. Crawford knew she had a pending discrimination action when she signed the General Release. Regardless of whether her counsel in the workers' compensation action knew of the discrimination action, Crawford was aware and had the ability to discuss the issue with either of her counsel.[2] And under

---

[2]Crawford argues her workers' compensation counsel "was unaware" of the discrimination action. But her declaration explains the opposite: She "told the lawyers in the workers'

-5-

Michigan law, "it was [Crawford's] duty to 'read' the contract and obtain an explanation if [she] did not understand it." *In re Stock X Customer Data Sec. Breach Litig.*, 19 F.4th 873, 882 (6th Cir. 2021) (quoting *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. 1999)). She may not now claim oversight. *Komraus Plumbing & Heating, Inc. v. Cadillac Sands Motel, Inc.*, 195 N.W.2d 865, 868 (Mich. 1972) ("[O]ne who signs a contract will not be heard to say, when enforcement is sought, that [s]he did not read it, or that [s]he supposed it was different in its terms.").

Nor is there any evidence of fraud, duress, or mutual mistake, which we consider when undertaking a totality-of-the-circumstances inquiry. *See Gascho*, 400 F. App'x at 982–83. While Crawford claims she did not intend to release Magna Seating from any potential ADA or PWDCRA liability, the mistake was not shared by Magna Seating. *Nicklin*, 352 F.3d at 1081 (explaining that unilateral mistake "will not invalidate [an] agreement"); *see also Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 285 (Mich. Ct. App. 2006) (same). In sum, Crawford confirmed that she read the entire agreement and "understood any and all terms." She cannot avoid that confirmation now.[3]

\* \* \*

For these reasons, we affirm the judgment of the district court.

---

comp[ensation] case that [she] had another lawsuit and . . . they were aware of" the discrimination action.

[3]Crawford also asserts the Michigan Rules of Professional Conduct warrant relief due to "procedural irregularities" by Magna Seating's counsel in the discrimination action. She offers no evidence to support her claims, so we will not consider them. *See, e.g.*, *Vander Boegh*, 772 F.3d at 1063. And Crawford contends that counsel in her workers' compensation action "lacked authority to waive the claims in this lawsuit." But it was not her counsel who waived the claims; Crawford herself did when she signed the agreement.